**UNITED STATES of America,
Plaintiff,**

v.

**Dominick J. TINGHINO and Anna
Tinghino, Defendants.**

No. 73 C 725.

United States District Court,
E. D. New York.

June 12, 1975.

David G. Trager, U. S. Atty. by Thomas Illmensee, Asst. U. S. Atty., for plaintiff.

Berkwitt & Baruch, Brooklyn, N. Y., for defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Plaintiff brought this action against the defendants, and makes this motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment, in order to reduce to judgment income tax assessments previously made against the taxpayers, as follows:

### DOMINICK J. TINGHINO

| Taxable Period | Date of Assessment | Amounts of Assessments | Dates of Notice & Demand |
|---|---|---|---|
| 1962 | 10/24/69 | $ 3,163.32 | 10/24/69 |
|  |  | 81.31 |  |
|  |  | 1,238.37 |  |
| 1962 | 5/ 4/70 | 19,020.10 | 5/ 4/70 |
|  |  | 11,091.71 |  |
|  |  | 8,047.85 |  |
| 1963 | 10/24/69 | 5,186.71 | 10/24/69 |
|  |  | 137.99 |  |
|  |  | 1,719.29 |  |
| 1963 | 5/ 4/70 | 47,657.17 | 5/ 4/70 |
|  |  | 26,421.94 |  |
|  |  | 17,305.42 |  |
| 1965 | 10/24/69 | 155.12 | 10/24/69 |
| 1965 | 5/ 4/70 | 2,945.59 | 5/ 4/70 |
|  |  | 437.23 |  |
|  |  | 736.40 |  |
|  |  | 716.14 |  |
| 1965 | 5/26/67 | 5,798.92 | 5/26/67 |
|  |  | 1,449.73 |  |
|  |  | 387.37 |  |
| 1969 | 8/26/71 | 847.00 | 8/26/71 |
|  | 5/29/72 | 107.82 | 5/29/72 |
| 1970 | 7/ 9/71 | 33.00 | 7/ 9/71 |
|  |  | .49 |  |
|  |  | .46 |  |
| 1972 | 6/ 4/73 | 424.00 | 6/ 4/73 |
|  |  | 4.24 |  |
|  |  | 3.51 |  |

### DOMINICK J. & ANNA TINGHINO

| Taxable Period | Date of Assessment | Amounts of Assessments | Dates of Notice & Demand |
|---|---|---|---|
| 1967 | 8/ 2/68 | $3,159.70 | 8/ 2/68 |
|  |  | 101.11 |  |
|  |  | 56.74 |  |
| 1967 | 6/ 9/70 | 356.40 | 6/ 9/70 |
| 1968 | 2/13/70 | 659.80 | 2/13/70 |
|  |  | 65.98 |  |
|  |  | 32.84 |  |

Based on the above assessments, the taxpayers allegedly owe to the United States the sum of $159,550.77 plus accrued interest and failure to pay penalties in the amount of $34,822.79, to and including August 27, 1974, plus lien fees of $30.00 for a total amount due (inclusive of fraud penalties) of $194,403.56.

As indicated in the above schedule, the government imposed fraud penalties pursuant to 26 U.S.C. § 6653(b) for the years 1962 and 1963 in respective amounts of $11,091.71 and $26,421.94. Since such fraud penalties were imposed and assessed, the penalties for late filing of the tax returns in the amounts of $81.31 in 1962 and $157.99 in 1963 concedely should not have been imposed (see 26 U.S.C. § 6653(d)).

As also shown in the above schedule, the earliest date of assessment was May 26, 1967 and this action was commenced within six years thereafter by plaintiff's filing of a complaint on May 22, 1973. (See 26 U.S.C. § 6502(a)).

The government says that it was compelled to commence this action because the defendants have not paid the assessments and the Internal Revenue Service has been unable to discover any assets or property owned by the taxpayers who maintain that they have no assets.

■ With its notice of motion the plaintiff filed a statement pursuant to Rule 9(g) of the General Rules of this Court setting forth the above assessments and a statement that the defendant Dominick J. Tinghino was convicted in this Court by a jury on March 12, 1971 of two counts of wilfully failing to file income tax returns for the calendar years 1962 and 1963 (United States v. Tinghino, 69 CR 123). On January 27, 1975 the government filed, without objection, a supplemental statement pursuant to General Rule 9(g).

Defendants filed no counter statement pursuant to General Rule 9(g) and, accordingly, all of the statements set forth in the government's statement and supplemental statement must be taken and accepted as admitted facts for the purposes of this motion.

Defendant Dominick J. Tinghino filed two affidavits in opposition to the government's affidavits filed in support of plaintiff's motion for summary judgment, and said defendant also filed a number of copies of deeds and mortgages and a large batch of copies of unidentified checks. In and by these papers said defendant attempts to raise issues and questions with respect to the underlying bases for the government's assessments for the years 1962 and 1963. No challenge, however, is made with respect to the government's assessments for the years 1965, 1967, 1968, 1969, 1970 or 1972. Even though the government made no assessments with respect to the year 1964, the defendants also submitted cancelled checks which they claimed to be "relative to expenses" claimed on their 1964 income tax return.

■ The law is clear that federal tax assessments are deemed presumptively correct and establish a *prima facie* case of liability. United States v. Rindskopf, 105 U.S. 418, 26 L.Ed. 1131 (1881); United States v. Molitor, 337 F.2d 917 (9th Cir. 1964); United States v. Strebler, 313 F.2d 402 (8th Cir. 1963); United States v. Lease, 346 F.2d 696 (2d Cir. 1965).

■ The burden of proving that federal tax assessments are erroneous rests upon the taxpayers. Lesser v. United States, 368 F.2d 306 (2d Cir. 1966); United States v. Lease, *supra*; Paschal v. Blieden, 127 F.2d 398 (8th Cir. 1942); United States v. Abrahams, 312 F.Supp. 1035 (S.D.N.Y.1970).

■ To sustain this burden the defendants must show that there are genuine issues of fact which are issues which can be supported by substantial evidence.

Riss & Co. v. Association of American Railroads, 190 F.Supp. 10 (D.D.C.1960). This the defendants have completely failed to do in the case at bar.

As to a number of the adjustments made by the government to the tax returns for 1962 and 1963, the defendants have merely submitted some documents from which they ask the Court to infer that their contention or explanation must follow. In each case the proof is insufficient.

For example, the government in these years relied upon the so-called "bank deposit method" and in analyzing the taxpayers' bank deposits with the taxpayers' accountant, there were some $5,-000 of unidentifiable excess bank deposits in 1962 which the government charged to the taxpayers as income. The defendant Dominick Tinghino has maintained that he received a "mortgage Loan" from individuals by the name of DeChellis in 1962 and in support of this contention he has included a copy of a mortgage which he gave to the mortgagees on February 9, 1962.

Defendants did not produce any proof, however, that they ever received any proceeds from any loan from DeChellis or that the "$5,000 proceeds" were ever deposited in the bank account in question. In view of the defendant Dominick Tinghino's admission to his accountant that all of his income was not put into his bank account, it may more reasonably be concluded that the $5,000 excess deposits were, as the government contends, "unexplained bank deposits".

The same situation generally obtains with respect to the other adjustments made by the government.

One of the largest adjustments in each year was a disallowance of unsubstantiated business expenses. In 1962 such disallowance amounted to $18,422.02 and in 1963 the disallowance was $22,105.67. To overcome this disallowance the taxpayers have submitted a large bundle of cancelled checks without attempting to identify any of them but at the same time advancing the claim that they represent support for the claimed business deductions. This method of "proof" is clearly insufficient. United States v. Duffy, 378 F.Supp. 22, (M.D.Pa.1974); Coursey v. Commissioner, CCH Tax Court Reporter, 33 TCM 1974–43 Dec. 32, 466(M) (1974); Cleveland Chiropractic College v. Commissioner, 312 F.2d 203 (8th Cir. 1963).

In reducing deficiency assessments to judgment in the *Duffy* case, *supra*, the Tax Court held as follows:

"The taxpayer must convince the trier of fact by a preponderance of evidence that the deficiency was factually incorrect and this he has completely failed to do. In addition to offering self-serving affidavits that along with a job for the Commonwealth of Pennsylvania, in Harrisburg, he practiced law in Wilkes-Barre, and thus incurred and paid certain expenses which he claimed as deductions, the taxpayer also so testified at length to such deductions. He offered no other witnesses, however, and submitted to the court in support of his contentions only several bundles of cancelled checks without attempting to identify any of them.

"In examining the checks the court finds that the great majority of them have no explanation as to what they purport to be payment for and many of those that do have an explanation on the face thereof explain only in red ink, obviously written after the checks were cashed and returned to taxpayer, that the check was given for 'office expenses' or some similar deductible item. In our opinion this falls far short of meeting the burden placed on the taxpayer to show that the assessment was incorrect."

It is clear from the foregoing that the defendants have failed to overcome the presumptive correctness of the govern-

ment's assessments in the case at bar and summary judgment must be granted to the plaintiff on this part of its motion.

■ The more troublesome part of the government's motion is the assessment of penalties for fraud in the years 1962 and 1963. Ordinarily such assessments might not be sustained on a motion for summary judgment. In the case at bar, however, the government's alleged indicia of fraud appear to be, for the most part, undisputed. As noted above, the defendants did not file a counter statement under Rule 9(g) and their affidavits in opposition to plaintiff's motion for summary judgment are limited in scope and content.

The government's assessments which have now been reduced to judgment are based upon a gross understatement of income for the year 1962 of $43,165.63 and for the year 1963 of $82,815.09. Moreover, it is undisputed that the defendant Dominick Tinghino was convicted for wilful failure to file income tax returns for the years 1962 and 1963 and that during such trial evidence was adduced that said defendant deliberately evaded meetings with an Internal Revenue Agent who came to his office and admittedly made a false, sworn statement on an application for an extension of time to file his 1964 income tax return. Moreover, taxpayers' accountant testified at the trial that said defendant's business records were disorganized, incomplete and that he had no accounting or bookkeeping system and that said defendant had admitted to him that he did not deposit all his income into his bank accounts because "* * * some of it I put in my pocket". In addition, said defendant admitted that he had not filed his 1961, 1962 and 1963 tax returns when he was required to do so and that he was aware both that his income required him to file and at the time of the requirement of filing returns. He also admitted that he never filed his New York State income tax returns for 1961

through 1963. Furthermore, when he finally did file federal returns for such years on December 12, 1966, no payment accompanied any of them although all three tax returns indicated a tax due for each respective year.

The government's proof also showed some evidence of the concealment of ownership of property and of the existence of fictitious named bank accounts.

The courts have repeatedly said that indicia of fraud include:

1) Gross understatements of income;

2) Failure to keep proper books and records;

3) Failure to cooperate with investigating agents;

4) The giving of evasive answers;

5) The giving of false answers;

6) Constant underreporting of income over a period of several years;

7) Concealing of ownership of property or income;

8) Fictitious named bank accounts;

9) Improper and excessive deductions;

10) Casual deceptive handling of one's own affairs and destruction of records;

See Koscove v. Commissioner, 225 F.2d 85, 87 (10th Cir. 1955); Webb v. Commissioner, 394 F.2d 366 (5th Cir. 1968); Lydon v. Commissioner, 351 F.2d 539 (7th Cir. 1965); Biggs v. Commissioner, 440 F.2d 1 (6th Cir. 1971); Harper v. Commissioner, 54 T.C. 1121 (1970); O'Conner v. Commissioner, 412 F.2d 304, 310 (2d Cir. 1969); Ruark v. Commissioner, 449 F.2d 311, 313 (9th Cir. 1971); Bender v. Commissioner, 256 F.2d 771 (7th Cir. 1958); Jackson v. Commissioner, 380 F.2d 661 (6th Cir. 1967).

The established and uncontradicted facts in the case at bar show that the

conduct evidenced almost every one of the foregoing indicia of fraud and in addition, of course, the defendant Dominick Tinghino was convicted for wilful failure to file income tax returns for the years in question (see Stoltzfus v. United States, 398 F.2d 1002, 1005 (3d Cir. 1968), cert. denied, 393 U.S. 1020, 89 S.Ct. 627, 21 L.Ed.2d 565 (1969) where a conviction for wilful failure to file income tax returns is "persuasive evidence" that the returns, when filed, were fraudulent) and he has paid no taxes to the government for such years and has never filed any New York State income tax returns or paid any New York income taxes for such years.

Under all of the circumstances there does not seem to be any genuine issue of fact to be resolved on the question of the defendants' fraud. Accordingly, this portion of plaintiff's motion for summary judgment must also be granted.

So ordered. Submit judgment.