UNITED STATES of America, Plaintiff,

v.

WAITE, INC., f/k/a C. F. Waite, Inc., Otto F. Hunger, Atlantic Richfield Company, City of Pittsburgh—Department of City Treasurer, Commonwealth of Pennsylvania—Department of Revenue, Bureau of Liquid Fuels Tax, Bureau of Corporation Taxes, Bureau of Personal Income Tax, Bureau of County Collections and Bureau of Taxes for Education, and Commonwealth of Pennsylvania—Department of Labor and Industry, Defendants.

Civ. A. No. 77–13.

United States District Court,
W. D. Pennsylvania.

Dec. 4, 1979.

Mikal H. Frey, Tax Div., Justice Dept., Washington, D. C., for plaintiff.

Joseph E. Schmitt, Stonecipher, Cunningham, Beard & Schmitt, Pittsburgh, Pa., for Atlantic Richfield Co.

John J. Kennedy, Jr., Deputy Atty. Gen., Pittsburgh, Pa., for the Commonwealth.

OPINION

SNYDER, District Judge.

This is an action on a case stated to reduce to judgment federal tax assessments against the Defendant Waite, Inc., formerly known as C. F. Waite, Inc., and to foreclose the federal tax lien in an amount in excess of $39,000 against the real property of Waite, Inc. located at Smallman Street and Haslett Way in Pittsburgh, Allegheny County, Pennsylvania. Other lien creditors of Waite, Inc. have been joined. The Court has now received the tax documents and affidavits of the taxpayer's attorney and the Internal Revenue case agent, and the matter is ripe for decision. We find the Government's lien proper and superior to those of the other Defendants.

Waite, Inc., under contract, sorted and hauled mail for the United States Government. It ceased doing business in February 1975, and its several tax liabilities included, inter alia, withholding and FICA taxes (employment taxes) for the third quarter of 1974. Demand (assessment) was made for this unpaid tax on December 2, 1974, which then became a lien on all Waite's personal and real property on that date, 26 U.S.C. § 6321.[1] The notice of federal tax lien was promptly filed in the Allegheny County Prothonotary's Office on December 10, 1974. The Commonwealth of Pennsylvania filed liens against Waite, Inc. on March 14, 1975 ($499.62), on July 10, 1975 ($5,045.40),

and on December 8, 1975 ($14,966.49). Atlantic Richfield obtained a judgment lien against Waite, Inc. on March 15, 1976 ($60,-537.37).

In its Complaint, the United States seeks to reduce to judgment its several tax assessments against Waite, Inc. (the assessments are itemized later in this opinion). All of Waite's assets have been disposed of (through judicial sales) prior to this action with the exception of the Smallman Street property. While this action was pending, the property was sold on February 22, 1978, by order of this Court at a Marshal's Sale for $37,000. The property was sold to Four States Realty Company free and clear of all encumbrances. The present action will determine the distribution of the proceeds of that sale of property formerly owned by Waite, Inc.[2] The United States is competing with the Commonwealth of Pennsylvania and Atlantic Richfield Company for status as a superior lien creditor of Waite, Inc. on the Smallman Street property fund by asserting its lien based on the assessment for the employment taxes for the third quarter of 1974.[3]

There is no dispute that notice of a tax lien in favor of the United States was filed on December 10, 1974, and long prior to the liens of the Commonwealth and Atlantic Richfield. The question here is whether the United States properly applied subsequent payments and tax credits against the amounts owed by Waite, Inc. to the United States, and if the United States may have released its lien. To resolve this, we first must refer to an agreement reached between the taxpayer's attorney and the Internal Revenue Service.

---

1. Section 6321 provides:

   "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

2. The City of Pittsburgh was dismissed as a party defendant on its own motion when the

City learned that the claim it thought it had against the property had been paid.

3. In its Complaint, the United States also seeks to reduce to judgment the employment tax assessment for the first quarter of 1975. Since a notice of this tax lien was not filed in the Allegheny County Prothonotary's Office, this lien could not be superior to those of the Commonwealth or Atlantic Richfield. We will not consider this tax assessment.

Harry W. Schwab, Esquire represented Waite, Inc. when it ceased doing business (as well as the corporation's owner, Donald G. Waite), and handled the numerous Internal Revenue claims for unpaid taxes. Schwab stated that his primary concern was to eliminate the potential personal liability, under 26 U.S.C. § 6672,[4] of Donald Waite, as an officer, for the failure of Waite, Inc. to collect taxes. Realizing that the withholding and FICA taxes due for the third quarter of 1974 were secured by a "first and best" lien on the real property on Smallman Street in Pittsburgh, Schwab orally agreed with Internal Revenue Agent Donald Newvahner that additional monies received by or on behalf of Waite, Inc. were to be applied to the Internal Revenue claims *other than* for the third quarter of 1974. In accordance with this agreement, Schwab made payments and these were credited to outstanding corporate liabilities other than the employment tax liability for the third quarter of 1974. Similarly, Newvahner credited involuntary payments (levies served on debtors of Waite, Inc.) to liabilities other than the third quarter of 1974.

The credit was mistakenly applied to the third quarter of 1974, reducing the tax liability for that quarter to zero. Discovering the mistake, Newvahner, on March 7, 1977, sent another set of Payment Tracer Requests again ordering the credit to be applied to tax liabilities other than the third quarter of 1974. The credit to the third quarter was removed and the credits were applied as Newvahner requested. Internal Revenue records show that as of June 30, 1979, the balance due on the employment tax for the third quarter of 1974 was $39,-745.62.[6] Interest and penalties continue to

During an Internal Revenue audit, it was determined that a credit of $21,712.83 was due Waite, Inc. on its 1972 corporate income tax. On August 19, 1976, Newvahner, having recently learned of the credit, sent to the Internal Revenue Service's Cincinnati Service Center, "Payment Tracer Requests" ordering the funds from the credit to be applied to liabilities other than the employment tax for the third quarter of 1974. Specifically, the credit was to be applied to other tax assessments which are itemized below.[5]

**4.** 26 U.S.C. § 6672 provides in pertinent part, as follows:

"(a) General Rule.—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable."

**5.**

| Type of Tax & Taxable Period | | Date of Assessment | Balance as of 8/31/76 |
|---|---|---|---|
| Corporate Income Tax (1120) | 1970 | 10/15/71 | $5,634.47 |
| Corporate Income Tax (1120) | 1972 | 5/24/76 | 8.55 |
| Federal Unemployment Tax (940) | 1973 | 2/2/76 | 3,842.03 |
| Diesel Fuel Excise Tax (720) 1Q | 1973 | 2/10/76 | 372.87 |
| Highway Use Tax (2290) 3Q | 1973 | 7/17/75 | 75.84 |
| Withholding/FICA tax (941) 1Q | 1975 | 9/18/75 | 22,353.46 |
| | | 10/13/75 | |

The notice of lien on each of these was filed only at the County Recorder's office, Summit County, Akron, Ohio, and thus no lien arising from assessments on these liabilities would be superior to the liens of the Commonwealth and Atlantic Richfield on the Smallman Street property.

**6.** The Internal Revenue records also indicate that the only other outstanding tax liability is the withholding and FICA tax for the first quarter of 1975, with a balance due as of June 30, 1979 of $12,651.52.

accrue, but the balance due well exceeds the purchase price of the property and therefore the exact amount is not material.

Although the Internal Revenue records temporarily reflected that the assessed balance for the third quarter of 1974 was zero, a certificate of release was not issued.

### Discussion

As stated above, this is primarily an action to enforce the federal tax lien on the proceeds of the sale of the Smallman Street property. Under 26 U.S.C. § 7403, the Court must first determine if the United States has established its claim on the underlying tax liability.

■ We start with the legal proposition that federal tax assessments are presumptively correct and establish a prima facie case of liability. *Helvering v. Taylor*, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935); *United States v. Tinghino*, 396 F.Supp. 743 (E.D.N.Y.1975); *United States v. Duffy*, 378 F.Supp. 22 (M.D.Pa.1974). Waite, Inc. was assessed for third quarter employment taxes on December 2, 1974 and the balance due as of June 30, 1979 was $39,745.62. The taxpayer was properly served with the complaint in this action and was given ample opportunity to contradict the assessment, but chose not to do so. The assessment, unimpeached, is therefore sufficient to establish the claim of the United States. *See also United States v. Raleigh Restaurant*, 398 F.Supp. 496 (E.D.N.Y.1975) (default judgment to the United States if taxpayer fails to appear to contest tax assessment).

■ Federal law determines the priority of competing liens on property on which there is a federal tax lien or levy. *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277,

4 L.Ed.2d 1365 (1960). Section 6321 of the Internal Revenue Code, 26 U.S.C. § 6321, provides that upon assessment of a taxpayer for failing to pay any federal taxes owed, a lien in favor of the United States in the amount of the unpaid tax and any interest, penalty and additional tax which accrues immediately attaches to all property and rights to property, real or personal, belonging to such person.

■ A contest between the federally created tax lien and a competing lien is resolved by the first in time, first in right rule enunciated in *United States v. City of New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). *See also United States v. Beaver*, 252 F.2d 486 (3rd Cir. 1958). Section 6323 of the Code, 26 U.S.C. § 6323, provides that the federal lien is not valid as against judgment lien creditors until the filing of notice of the lien in accordance with 26 U.S.C. § 6323(f). The state lien is prior in time if it becomes a choate lien against the property prior to the filing of the federal tax lien. *See Bank of California v. United States*, 520 F.2d 302 (9th Cir. 1975); *Atlas, Inc. v. United States*, 459 F.Supp. 1000 (D.N.D.1978); *United States v. Pennsylvania Department of Highways*, 349 F.Supp. 1370 (E.D.Pa.1972). A state created lien is choate if the lienor has obtained judgment on the lien or if the lien is enforceable against the property by summary proceedings. *United States v. Equitable Life Assurance Society*, 384 U.S. 323, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966); *New York Life Insurance Co. v. Central National Bank*, 453 F.Supp. 37 (N.D.Ill.1978).

■ The record indicates that notice of the federal tax lien was filed in Allegheny County on December 10, 1974, in accordance with 26 U.S.C. § 6323.[7] Pennsylvania's and Atlantic Richfield's liens were not choate as

---

7. 26 U.S.C. § 6323 provides in pertinent part, as follows:

"(a) *Purchases, holders of security interests, mechanic's lienors, and judgment lien creditors.*—The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanics's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.

\* \* \* \* \* \*

(f) *Place for filing notice; form.*—
(1) *Place for filing.*—The notice referred to in subsection (a) shall be filed—
(A) *Under State laws.*—
(i) *Real property.*—In the case of real property, in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated; and

of that date, and thus the federal tax lien is superior to the state liens.

■ Finally, we must decide whether the federal lien was released. Subsequent to the filing of the federal lien, the Internal Revenue collected tax payments from or on behalf of Waite, Inc., and Waite, Inc. became entitled to a tax credit, all of which were applied to Waite's tax liabilities other than the third quarter of 1974. As we stated earlier, these payments were directed away from the third quarter of 1974 assessment pursuant to an agreement between the attorney for Waite, Inc. and an Internal Revenue Agent. Neither the Commonwealth nor Atlantic Richfield have challenged the propriety of this selective application of payments, and our review of the applicable provisions of the Internal Revenue Code reveals such latitude is afforded the taxpayer and the Internal Revenue Service. *See, e. g.,* 26 U.S.C. § 6402 (the Secretary may credit overpayments against *any*

tax liability of the person who made the overpayment).

■ For a period of approximately seven months (August 1976 through March 1977), the Internal Revenue records mistakenly showed that a tax credit had been applied to Waite, Inc.'s third quarter tax liability. (The credit was subsequently applied to different tax liabilities.) However, the mistaken application of a payment or credit on Internal Revenue records to a tax liability secured by a tax lien does not per se release the lien.

■ Section 6325 of the Internal Revenue Code, 26 U.S.C. § 6325, governs the release of federal tax liens. The Secretary or his delegate must issue a certificate of release of the lien which must be filed in the same office as the notice of lien or in the Clerk's office. 26 U.S.C. § 6325(f) and (g).[8] The Secretary issues the certificate when he makes a finding that the liability for the amount assessed has been fully sat-

(ii) *Personal property.*—In the case of personal property, whether tangible or intangible, in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated; or

(B) *With clerk of district court.*—In the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated, whenever the State has not by law designated one office which meets the requirements of subparagraph (A); or

(C) *With Recorder of Deeds of the District of Columbia.*—In the office of Recorder of Deeds of the District of Columbia, if the property subject to the lien is situated in the District of Columbia.

(2) *Situs of property subject to lien.*—For purposes of paragraph (1), property shall be deemed to be situated—

(A) *Real property.*—In the case of real property, at its physical location; or

(B) *Personal property.*—In the case of personal property, whether tangible or intangible, at the residence of the taxpayer at the time of the notice of lien is filed."

8. 26 U.S.C. § 6325(f) and (g) provides:

"(f) *Effect of certificate.*—

(1) *Conclusiveness.*—Except as provided in paragraphs (2) and (3), if a certificate is issued pursuant to this section by the Secretary or his delegate and is filed in the same office as the notice of lien to which it relates (if such notice

of lien has been filed) such certificate shall have the following effect:

(A) in the case of a certificate of release, such certificate shall be conclusive that the lien referred to in such certificate is extinguished;

(B) in the case of a certificate of discharge, such certificate shall be conclusive that the property covered by such certificate is discharged from the lien;

(C) in the case of a certificate of subordination, such certificate shall be conclusive that the lien or interest to which the lien of the United States is subordinated is superior to the lien of the United States; and

(D) in the case of a certificate of nonattachment, such certificate shall be conclusive that the lien of the United States does not attach to the property of the person referred to in such certificate.

(2) *Revocation of certificate of release or nonattachment.*—If the Secretary or his delegate determines that a certificate of release or nonattachment of a lien imposed by section 6321 was issued erroneously or improvidently, or if a certificate of release of such lien was issued pursuant to a collateral agreement entered into in connection with a compromise under section 7122 which has been breached, and if the period of limitation on collection after assessment has not expired, the Secretary or his delegate may revoke such certificate and reinstate the lien—

(A) by mailing notice of such revocation to the person against whom the tax was assessed at his last known address, and

isfied or has become legally unenforceable, or if he accepts a bond conditioned upon payment of the amount assessed. 26 U.S.C. § 6325(a). The lien, however, is not released until the certificate is issued. Should the Secretary, for any reason, refuse to issue the certificate of release, the taxpayer may institute action to force issuance of a certificate. In the interim, the lien stands. *Cf. Brunwasser v. Jacob,* 453 F.Supp. 567 (W.D.Pa.1978); *Roberts v. United States,* 436 F.Supp. 560 (E.D.Tex. 1977); *Kurio v. United States,* 281 F.Supp. 252 (S.D.Tex.1968).

Here, there was no finding by the Secretary that Waite, Inc.'s liability for the 1974 third quarter employment taxes was satisfied or legally unenforceable, and no certificate of release was issued by the Secretary. Thus, the lien was not released and continues to date.

We conclude that the federal tax lien on the Smallman Street property (properly filed on December 10, 1974) was superior to the claims of other lien creditors, the Commonwealth of Pennsylvania and Atlantic Richfield Company. In view of the fact that the Government's lien is for an amount in excess of the selling price of the property, we need not make further findings on priorities.

The foregoing shall constitute the Court's findings of fact and conclusions of law as required by F.R.Civ.P. 52. An appropriate order shall be entered distributing the proceeds from the sale of the property to the United States.

(B) by filing notice of such revocation in the same office in which the notice of lien to which it relates was filed (if such notice of lien had been filed). .

Such reinstated lien (i) shall be effective on the date notice of revocation is mailed to the taxpayer in accordance with the provisions of subparagraph (A), but not earlier than the date on which any required filing of notice of revocation is filed in accordance with the provisions of subparagraph (B), and (ii) shall have the same force and effect (as of such date), until the expiration of the period of limitation on collection after assessment, as a lien imposed by section 6321 (relating to lien for taxes).

(3) *Certificates void under certain conditions.*—Notwithstanding any other provision of this subtitle, any lien imposed by this chapter shall attach to any property with respect to which a certificate of discharge has been issued if the person liable for the tax reacquires such property after such certificate has been issued.

(g) *Filing of certificates and notices.*—If a certificate or notice issued pursuant to this section may not be filed in the office designated by State law in which the notice of lien imposed by section 6321 is filed, such certificate or notice shall be effective if filed in the office of the clerk of the United States district court for the judicial district in which such office is situated."