**Alfred RODRIGUEZ and Marguerite Rodriguez, Plaintiffs,**

v.

**The UNITED STATES of America and James S. Straughn, Defendants.**

No. 82 C 5064.

United States District Court,
N.D. Illinois, E.D.

Feb. 19, 1986.

Abraham N. Goldman, Abraham N. Goldman & Associates, Ltd., Chicago, Ill., for plaintiffs.

William Clabault, Asst. U.S. Atty., Chicago, Ill., and Angelynn C. Hall, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendants.

### MEMORANDUM AND ORDER

MORAN, District Judge.

This case presents the issue of whether the Internal Revenue Service may, without warning, levy on a taxpayer's bank account when the only reason the taxpayer has an underpayment is that an IRS computer, without any request from the taxpayer, erroneously generated a refund check. This court holds that it cannot and orders that the levy be lifted.

### FACTS

The facts in this case are few and not seriously disputed. On May 19, 1978, the IRS made an assessment which determined that plaintiffs owed $19,276.12 in taxes and $5,333.72 in penalties and interest for the tax years 1968, 1970 and 1972. When this amount went unpaid after notice and demand, the IRS levied on real estate owned by plaintiffs and scheduled it for sale. However, on the last day before the sale, October 22, 1981, plaintiffs redeemed their property by tendering three checks totalling $25,150 (including interest which had accrued) to Revenue Officer James Straughn. He accepted the checks and the IRS negotiated them. Then on December 25, 1981, perhaps in a fit of seasonal generosity, the IRS issued a refund check to plaintiffs for $2,822.46, which they promptly negotiated. Their next contact with the IRS on this matter came when they discovered that Straughn had levied on their account at the Belmont National Bank on July 28, 1982. The IRS considered plaintiffs to be $2,750 in arrears. It had sent no additional notice of deficiency, demand for payment or notice of levy.

The IRS explains this state of affairs as follows. Plaintiffs did not supply three checks drawn to the amounts of the three separate liabilities for each of the three tax years in question but rather only checks which, taken together, covered the total liability for all three years. When the checks reached the Service's computer, the correct amount to meet the existing liability was entered only for 1972. The computer applied $16,180.24 to tax year 1970, for which only $13,425.70 was owed. Conversely, it applied only $1,584.99 to 1968, for which $4,334.99 was owed. Thus the IRS issued a refund for the 1970 overpayment plus $67.92 in interest, while maintaining a $2,750 balance due for 1968. According to the IRS the check was clearly marked "1970 taxes". Its position, therefore, is that the refund check was not in error since 1970 had in fact been overpaid. The 1968 liability, however, had never been fully paid. It therefore issued no new notice of deficiency or notice of assessment and demand for taxes since in its opinion

none was necessary. The levy was grounded on the notice and demand of May 19, 1978.

Plaintiffs bring this action in two counts: one against the United States (Department of the Treasury, Internal Revenue Service), alleging that the levy is void for failure to follow the procedures for levy set out in the Internal Revenue Code, which seeks injunctive relief; and one against Revenue Officer Straughn for violation of their due process rights under the Fifth Amendment, causing emotional distress, which seeks damages.[1] They contend that since they had paid the full amount the IRS demanded, Straughn could not simply levy on their bank account without notice. While they may ultimately owe the $2,750, they maintain that the IRS could only recover it either through a suit for an erroneous refund or through a new procedure including a new assessment, notice and demand. They move for summary judgment on count I.

The United States and Straughn move to dismiss for failure to state a claim on which relief can be granted or, in the alternative, for summary judgment. They argue that this court has no jurisdiction to hear the claim, that sovereign immunity bars any relief against either the United States or Agent Straughn, and that the relief plaintiffs seek is unavailable because of both 26 U.S.C. § 7421, which prohibits a "suit for the purpose of restraining the assessment or collection of any tax," and 28 U.S.C. § 2201, which expressly disallows a declaratory judgment on tax liabilities. They have, however, failed to respond directly to the arguments presented in support of plaintiffs' motion.

## DISCUSSION

■ Plaintiffs' claim takes this court into the maze of statutes which govern the assessment and collection of taxes, tax liens, tax levies, refunds and so on, statutes which have erected a system described by one federal court as "unworkable" and "so complicated that even the IRS admits it cannot completely understand it." *White v. Commissioner of Internal Revenue*, 537 F.Supp. 679, 689 (D.Colo.1982). This court, however, believes it has threaded a route through the maze. When an action challenges only the procedural validity of a tax levy, not the merits of the alleged tax liability, a federal district court has jurisdiction and can grant injunctive and declaratory relief. Congress has determined the procedure to which a taxpayer is entitled in the statutes which govern determination of deficiency, assessment and collection. Under those statutes, as construed by the courts, when plaintiffs redeemed their property in October 1981 they extinguished both the levy and the underlying deficiency. The later refund check created at most a new underpayment which the IRS could collect only by initiating new procedures.

## I. Ability to Hear and Grant Relief

The IRS contends that these plaintiffs simply have no recourse in this court. Jurisdiction is absent, it maintains, and various statutes block relief. However, its grounds for this position have all been heard and rejected rather consistently by other federal courts in recent years.

The general grant of jurisdiction over federal tax matters to district courts, 28 U.S.C. § 1340, is indeed riddled by express limitations on jurisdiction and remedies in other statutes, including those the IRS cites. Ordinarily, for example, a federal district court has jurisdiction of a dispute over taxes only if the plaintiff has first

1. The complaint itself actually is somewhat garbled and not clearly divided into counts. At one point it appears to attempt to sue the United States and Officer Straughn in part under 42 U.S.C. § 1983, which of course applies only to state, not federal, officials. This summary represents the gist of the complaint as construed by plaintiffs in their reply brief and motion for summary judgment. Since the elements of such counts indeed appear in the complaint, this court accepts plaintiffs' construction by applying the liberal construction principles of the Federal Rules to disregard the extraneous matter (this court would in any event allow amendment of the complaint under Fed.R.Civ.P. 15(a) ).

paid the amount he contests and then sues for a refund. 26 U.S.C. § 7422(a). The "pay now, argue later" principle is of long standing. *See Flora v. United States*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960).

Plaintiffs' challenge to the IRS levy, however, is not blocked by any of those limitations, nor could it be. One example will suffice to explain why. Congress has expressly provided an alternative to taxpayers who seek to retain control of their money or other property while litigating IRS determinations, by establishing the Tax Court and procedures to protect it. A taxpayer must first be notified that the IRS has determined a deficiency (§ 6212 notice). The taxpayer then has 90 days during which the IRS may neither assess that deficiency nor levy on the taxpayer's property, unless the delay puts eventual collection in jeopardy. If he files in the Tax Court the IRS is further prohibited from assessment or levy while awaiting the results of that litigation. 26 U.S.C. §§ 6211, 6212, 6213. *See generally Clark v. Campbell*, 501 F.2d 108, 111–112, 122 (5th Cir.1974); *Rambo v. United States*, 492 F.2d 1060, 1062, 1064 (6th Cir.1974) (history and purpose of Tax Court; appropriate procedures). Only after that period may the IRS assess an actual tax liability and issue a notice and demand for tax (§ 6303 notice and demand), and only after the notice and demand may the IRS levy on the taxpayer's property. 26 U.S.C. §§ 6201, 6203, 6303, 6331. *See also* 26 C.F.R. § 301.6331–1. Again there are provisions for swifter action if collection appears in jeopardy, but even jeopardy assessments and levies are subject to judicial review. 26 U.S.C. § 7429.

The step-by-step procedural safeguards make sense. The jurisdiction of the Tax Court is explicitly based on the issuance to the taxpayer of a § 6212 notice of determination of deficiency. 26 U.S.C. § 6214; *Clark*, 501 F.2d at 112; *Rambo*, 492 F.2d at 1062. In popular parlance, this § 6212 notice, the "90-day letter," is the "ticket to the Tax Court," and no taxpayer is admitted without a "ticket." *Corbett v. Frank*, 293 F.2d 501, 503 (9th Cir.1961). If the IRS

could simply seize property without notice, while the district court remained unable to hear tax complaints until the disputed sum was paid, the IRS would have the power to make the Tax Court alternative effectively meaningless. *See Aqua Bar & Lounge, Inc. v. United States*, 539 F.2d 935, 939 (3d Cir.1976); *Viva, Ltd. v. United States*, 490 F.Supp. 1002, 1007 (D.Colo.1980). A careful reading of the statutes shows that Congress left district courts the ability to hear a complaint that the Service has not followed the congressionally-mandated procedure, and to grant relief.

## A. Jurisdictional Grant

Assuming that the immunity, injunction and declaratory judgment problems can be hurdled, this court has jurisdiction of count I pursuant to 28 U.S.C. § 1340, a grant over "any civil action arising under any Act of Congress providing for internal revenue." A suit which seeks a determination that an Internal Revenue Service levy is void for failure to follow statutory procedure arises under the statutes which govern assessment and levy, *e.g.*, 26 U.S.C. §§ 6201, 6212, 6213, 6303, and 6331. Construction of these acts is necessary to determine if the IRS has complied with the necessary procedure and they are acts "providing for internal revenue." *See Aqua*, 539 F.2d at 937; *Popp v. Eberlein*, 409 F.2d 309, 312 (7th Cir.), *cert. denied*, 396 U.S. 909, 90 S.Ct. 222, 24 L.Ed.2d 185 (1969); *United States v. Coson*, 286 F.2d 453, 457–458 (9th Cir.1961); *Viva*, 490 F.Supp. at 1004–1005; *Yannicelli v. Nash*, 354 F.Supp. 143, 149 (D.N.J.1972); *Little River Farms, Inc. v. United States*, 328 F.Supp. 476, 478 (N.D.Ga.1971).

## B. Immunity

A mere grant of jurisdiction is, as the IRS points out, not necessarily equivalent to a waiver of the sovereign immunity which the United States enjoys. Consent to be sued when the IRS oversteps its procedural bounds can, however, be found in at least two other statutes. For a com-

plaint that the IRS has issued a levy on a taxpayer's property without first notifying the taxpayer that it had determined a deficiency, or that it levied during the 90-day period after that notice, or for an inadequate jeopardy procedure, the Internal Revenue Code itself contains a waiver of immunity in 26 U.S.C. § 6213(a). For other types of procedural flaws, most courts which have dealt with the question have found consent to be sued in 28 U.S.C. § 2410, the action to quiet title to either realty or personalty on which the United States claims a lien.

Section 6213(a) consents to a suit for injunctive relief for failures in notice at the initial stages of IRS action. *L.O.C. Industries, Inc. v. United States*, 423 F.Supp. 265, 268–269, 274 (M.D.Tenn.1976). That conclusion follows from the language of the statute and from the Supreme Court's decision in *Laing v. United States*, 423 U.S. 161, 96 S.Ct. 473, 46 L.Ed.2d 416 (1976). In *Laing*, the taxpayer alleged that the IRS had seized cash belonging to him without following the procedures for a jeopardy termination and sought "an injunction against [its] continued possession by the Internal Revenue Service." *Laing v. United States*, 364 F.Supp. 469, 470 (D.Vt.1973). While the Supreme Court did not specifically characterize the issue as one of immunity, it expressly grounded his right of action on § 6213. *Laing*, 423 U.S. at 185 n. 27, 96 S.Ct. at 486 n. 27. The section reads in pertinent part:

> Except as otherwise provided [by the procedure for jeopardy assessment], no assessment of a deficiency in respect of [income, state or gift taxes], and no levy or proceeding in court for its collection shall be made, begun or prosecuted until notice [of deficiency under § 6212] has been mailed to the taxpayer ... [T]he making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court.

26 U.S.C. § 6213(a). The statute thus expressly consents to a suit for injunctive relief when the IRS has levied on property without following the congressionally-mandated procedures.

The court in *L.O.C.*, 423 F.Supp. at 268–269, 274, following *Laing*, so interpreted § 6213, finding that sovereign immunity did not bar a suit to have an IRS levy on the plaintiffs' bank account set aside for insufficient notice. Plaintiffs here make essentially the same claim. Section 6213 is of course part of the Internal Revenue Code, so a suit under it clearly falls within the jurisdictional grant of 26 U.S.C. § 1340. *See also Clark*, 501 F.2d at 111–113; *McGee v. United States*, 380 F.Supp. 801, 802 (N.D.Ind.1974).

Immunity is also not a barrier to actions for procedural inadequacies which occur at later stages of the collection process. Even after the 90-day period has expired, the taxpayer is still entitled to notice that a deficiency has been formally assessed and to a demand for payment of the tax. 26 U.S.C. § 6303. A levy may not issue until ten days after that notice and demand has been made, unless the Service has made a jeopardy assessment. 26 U.S.C. § 6331. If the proper notice and demand is lacking, the levy is void. *Shapiro v. Secretary of State*, 499 F.2d 527, 531 n. 12 (D.C.Cir. 1974), *aff'd sub nom. Commissioner v. Shapiro*, 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976); *White v. Cardoza*, 368 F.Supp. 1397, 1399 (E.D.Mich.1973); *Matter of Computer Management, Inc.*, 40 B.R. 201, 203 (Bankr.N.D.Ga.1984). It follows that if Congress gave taxpayers procedural rights there must be a legal route they can follow to enforce them. Though courts are not unanimous, most find that route in a quiet title action.

■ Section 2410 of the Judicial Code reads in part:

> The United States may be named a party in any civil action or suit in any court ... to quiet title to ... real or personal property on which the United States has or claims a mortgage or other lien.

The Supreme Court has held that § 2410 is indeed a waiver of sovereign immunity for

those situations which it covers. *United States v. John Hancock Mutual Life Insurance Co.*, 364 U.S. 301, 81 S.Ct. 1, 5 L.Ed.2d 1 (1960). The only question, then, is whether it covers a taxpayer's suit for improper procedure. The § 2410 action is typically used by third parties, but nothing in its language expressly limits it to third parties. *Aqua*, 539 F.2d at 938.[2] An action which challenges only the procedure used in making the levy, not the merits of the assessment, does not run afoul of the rule that deficiency determinations can be challenged only in the Tax Court unless they have first been paid. The relevant statute, 26 U.S.C. § 7422(a), bars a suit "for the *recovery* of" any tax penalty or sum "alleged to have been erroneously or illegally assessed or collected" until a refund claim has been filed (emphasis added). The funds in question here have not actually been collected and the suit does not seek their recovery from the Treasury. *Cf. Coson*, 286 F.2d at 459.[3] The IRS admits that it made no new assessment, and plaintiffs do not seek an adjudication here of whether or not they in fact owe the money, so the merits of the assessment cannot be at issue. The action is therefore properly construed as an action to quiet title within the meaning of § 2410, and therefore within that statute's waiver of immunity. *Aqua*, 539 F.2d at 939; *Coson*, 286 F.2d at 457; *Viva*, 490 F.Supp. at 1007; *Yannicelli*, 354 F.Supp. at 151, 157–158; *Little River*, 328 F.Supp. at 479; *Roberts v. United States*, 436 F.Supp. 560 (E.D.Tex.1977). Indeed, the IRS itself, in a case where it wanted to assert its rights to funds seized from an alleged narcotics dealer by local police, successfully argued that a dispute over its levy could be removed to federal court under the § 2410 immunity waiver. *Hudson County Board of Chosen Freeholders v. Morales*, 581 F.2d 379, 383 (3d Cir.1978).

That statute, of course, speaks expressly of a "lien" rather than a "levy," but the existence of an asserted lien is a conceptual precondition to a levy. The tax

---

**2.** A few courts have declined to allow taxpayer suits for lack of § 6303 notice and demand under 28 U.S.C. § 2410 on immunity grounds. *Falik v. United States*, 343 F.2d 38, 40–41 (2d Cir.1965), saw a problem in pairing § 2410 with the jurisdictional base of § 1340 for suits arising under tax laws, since § 2410 is part of the Judicial Code rather than the Internal Revenue Code. The same court, and one other, was reluctant to find that taxpayers had standing under § 2410 for policy reasons. *Falik*, 343 F.2d at 42; *Globe Products Corp. v. United States*, 386 F.Supp. 319 (D.Md.1974). However, these cases predate *Commissioner v. Shapiro*, 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976), discussed *infra*, which would have allowed an action to enjoin a levy for lack of § 6303 notice. The court did not specify where it would have found waiver of immunity, but such a suit could not be heard without it. This court takes *Shapiro* as an indication that the *Aqua-Coson-Yannicelli* line of cases, which in any event comprise the decisive weight of authority, have correctly construed § 2410. Alternatively, *Shapiro* may have extended the § 6213(a) waiver of immunity to § 6303 notice, as it extended that statute's exception to the Anti-Injunction Act to § 6303 notice. *See discussion infra.*

**3.** This court does not consider a sum levied upon to be constructively "collected," as did the court in *Eske v. Hynes*, 601 F.Supp. 142, 143 (E.D.Wis.1985). We would agree that if so construed, then an action against the levy would be a suit for the "recovery" of the sum barred by § 7422(a), unless the plaintiff has filed a refund claim. However, under that interpretation the express waiver of immunity in § 6213(a), authorizing actions to enjoin levies imposed before or during the taxpayer's 90-day opportunity to file in the Tax Court, would become effectively meaningless. The Supreme Court does not so construe § 7422, since a companion case to *Laing*, which was affirmed, granted injunctive relief to a taxpayer whose property had been levied upon pursuant to § 6331 but without proper notice. The property, an automobile, was physically in the possession of the IRS. *Laing*, 423 U.S. at 168, 185–186 n. 27, 96 S.Ct. at 486 n. 27, *aff'g Hall v. United States*, 493 F.2d 1211 (6th Cir.1974). *See also L.O.C.*, 423 F.Supp. at 268–269. Congress intended to give the taxpayer the option to retain control of his property and litigate the deficiency determination in the Tax Court, unless payment was in jeopardy. This option must be made available before collection. *See* 26 U.S.C. §§ 6213(a), 6213(c), 7422(e). It follows that a levy which deprives the taxpayer of control over his property before he has had this option, cannot be a "sum ... collected" within the meaning of § 7422(a). *Cf., Yannicelli*, 354 F.Supp. at 150, 157 n. 7. The *Eske* facts did not present an improper notice problem and the court cited no authority for its construction.

lien is the first legal step in the process of collection of assessed deficiencies. It arises as soon as a deficiency has been assessed, the taxpayer notified, and the demand for payment refused. 26 U.S.C. § 6321. *See generally United States v. National Bank of Commerce*, 472 U.S. ——, ——, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985); *United States v. Rodgers*, 461 U.S. 677, 681–682, 103 S.Ct. 2132, 2136, 76 L.Ed.2d 236 (1983); *Yannicelli*, 354 F.Supp. at 152. The tax lien, however, is not self-enforcing. The IRS has two principal methods for that: the lien foreclosure suit under 26 U.S.C. § 7403, and the administrative levy under 26 U.S.C. § 6331. The foreclosure suit actually adjudicates rights to the property in question. The levy is a provisional remedy which protects the Treasury against diversion or loss of the property while the rights are being adjudicated. *Bank of Commerce*, 472 U.S. at ——–——, 105 S.Ct. at 2924–2925. Through the levy, which is in effect a seizure, the government takes constructive possession of the property to enforce the lien. *United States v. Pittman*, 449 F.2d 623, 627 (7th Cir.1971). Analogizing the tax lien to a security interest, the tax levy has been aptly described as one method of perfecting a tax lien. *In Re Robby's Pancake House of Florida, Inc.*, 24 B.R. 989, 997 (Bankr.E.D.Tenn.1982); *see also United States v. Jenison*, 484 F.Supp. 747 (D.R. I.1980). Thus the IRS cannot claim the right to levy on property without also having asserted, at least impliedly, a lien against it, and indeed the words have been treated as essentially interchangeable for purposes of finding an action covered by § 2410. *Hudson*, 581 F.2d at 381, 383; *Aqua*, 539 F.2d at 936, 939; *Yannicelli*, 354 F.Supp. at 147, 151; *Little River*, 328 F.Supp. at 478–479. Immunity has been waived for count I under 26 U.S.C. § 6213(a), 28 U.S.C. § 2410, or both.

### C. Injunction

The IRS also claims that plaintiffs' action is barred by 26 U.S.C. § 7421, which says that except for actions under eight specified statutory provisions, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." However, again their position is not well grounded, because this action fits in one of the exceptions.

By its own language, and the language of § 6213(a), the Anti-Injunction Act does not apply to a taxpayer's suit to enjoin a levy imposed either before notice of deficiency, during the 90-day period after that notice, or while a petition is pending in the Tax Court. Section 6213(a), quoted above, expressly provides for enjoining such a levy, "notwithstanding the provisions of section 7421(a)." In turn, § 6213(a) suits are one of the eight exceptions specifically listed in § 7421(a). *See Commissioner v. Shapiro*, 424 U.S. 614, 617, 96 S.Ct. 1062, 1066, 47 L.Ed.2d 278 (1976); *Laing*, 423 U.S. at 184–185 n. 27, 96 S.Ct. at 485–86 n. 27. If plaintiffs were entitled to a § 6212 notice of deficiency and did not get it, the Anti-Injunction Act is no barrier to their suit.

Further, the Supreme Court has extended that exception in the Anti-Injunction Act to cases where the levy was made without the § 6303 notice of tax liability and demand for tax required by § 6331. In *Shapiro*, the IRS had made a jeopardy assessment and levy which the taxpayer alleged had been issued without notice and demand for tax. Unlike a regular levy, defective notice in a jeopardy proceeding can be cured by post-levy notice within 60 days of assessment. 26 U.S.C. § 6861. The IRS had sent such a belated notice. The Court, however, stated that compliance with the notice and demand procedure was necessary if the Anti-Injunction Act were to apply. Otherwise, § 6213(a) would permit suit. *Shapiro*, 424 U.S. at 617–619, 622 n. 7, 96 S.Ct. at 1066–67, 1068 n. 7.

■ Extending the exception of the Anti-Injunction Act to include the § 6303 notice and demand for tax also fits the rationale of that Act. The concern of the statute prohibiting injunctions against tax assessment or collection, as construed by the Supreme Court, is with pre-enforcement

suits seeking injunctive relief—suits which would directly halt the process of assessment or collection. Thus, the statute applies to injunctions which would be grounded on disputes over the right to tax or the amount to be assessed or collected. *Bob Jones University v. Simon*, 416 U.S. 725, 731–732, 94 S.Ct. 2038, 2043–2044, 40 L.Ed. 2d 496 (1974); *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). These concerns are not at issue when, as here, the enforcement has already taken place. A taxpayer who alleges that proper procedure has not been followed seeks relief from an illegal act of enforcement and therefore § 7421 should not apply. *See Yannicelli*, 354 F.Supp. at 151. Thus the court in *L.O.C.*, following *Shapiro*, enjoined a levy on funds in the taxpayer's bank account which had issued before the taxpayer had received a § 6303 notice and demand for tax. Unless the notice-and-demand requirements for levy set out in § 6331 are met, § 7421 will not block an injunction. *L.O.C.*, 423 F.Supp. at 272–273. Even if plaintiffs were only entitled to a § 6303 notice of liability and demand for tax, they are not barred from injunctive relief.

Courts which have characterized suits against a lien or levy like the present one as a quiet title action have also seen no barrier to them in the Anti-Injunction Act. A quiet title action simply is not a suit to restrain the assessment or collection of tax. Otherwise, § 2410, which was enacted well after the original Anti-Injunction Act, would be impossible to reconcile with § 7421. *Aqua*, 539 F.2d at 940; *Coson*, 286 F.2d at 468–469. Seen as a § 6213(a) suit or as a quiet title action, plaintiffs' suit is not barred by § 7421.

### D. Declaratory Judgment

■ The IRS also maintains that this court cannot declare the levy void because the Declaratory Judgment Act, 28 U.S.C. § 2201(a), does not apply to cases "with respect to federal taxes." Again, however, that prohibition does not apply to this pro-

cedural challenge. This provision of the Declaratory Judgment Act is generally interpreted as coextensive with the Anti-Injunction Act. If § 7421 permits relief, § 2201 will not bar it. *Perlowin v. Sassi*, 711 F.2d 910, 911 (9th Cir.1983). *See also Bob Jones*, 416 U.S. at 732–733 n. 7, 94 S.Ct. at 2044 n. 7 *and Commissioner v. "Americans United" Inc.*, 416 U.S. 752, 759 n. 10, 94 S.Ct. 2053, 2058 n. 10, 40 L.Ed.2d 518 (1974) (both discussing question); *Bullock v. Latham*, 306 F.2d 45 (2d Cir.1962). The Declaratory Judgment Act is intended, in tandem with § 7421, to prevent disputes over the right to tax or the merits of an assessment from being heard in the district court unless the tax has first been paid. *Church of Scientology of Celebrity Centre v. Egger*, 539 F.Supp. 491, 494 (D.D.C.1982). Suits which do not thwart those goals are permissible under both Acts.

This action is therefore permissible as a suit to quiet title or as a § 6213(a) suit for an injunction. The quiet title action, 26 U.S.C. § 2410, is itself a declaratory judgment action. Unless no matters relating to tax liens are ever to be heard in a § 2410 suit, then § 2410 cannot be within the intent of the prohibition on tax disputes in § 2201. *Aqua*, 539 F.2d at 940; *Roberts*, 436 F.Supp. at 561. A determination of the validity of the levy is also a necessary step in the process leading to the injunctive relief authorized in § 6213(a), whether characterized as a declaratory judgment or not. *Perlowin*, 711 F.2d at 911, expressly held that the Declaratory Judgment Act was no barrier to a suit grounded on § 6213(a), nor was it an issue to the Supreme Court hearing the § 6213(a) suit in *Laing*, 423 U.S. 161, 96 S.Ct. 473, 46 L.Ed.2d 416. *See Laing*, 364 F.Supp. at 470 (taxpayer also sought declaratory judgment). In short, the Declaratory Judgment Act would be a barrier to plaintiffs' suit only if it were given a construction inconsistent with the rest of the statutory scheme. This court does not so construe it.

This court, therefore, has jurisdiction and can grant relief. Defendants' motion to dismiss count I must be denied. Now the

analysis must turn to the effect of the redemption and refund on plaintiffs' tax liability, to determine if plaintiffs were entitled to more procedure than they received.

## II. Redemption, Refund and the Authority to Levy

Plaintiffs do not dispute that the IRS followed appropriate procedures in its initial handling of their taxes. Plaintiffs were notified of a deficiency and chose not to seek a redetermination in the Tax Court. The IRS then assessed the liability, notified plaintiffs, and demanded payment of the tax. Hearing nothing, they levied on plaintiffs' property. The questions rest rather on the combined effect of plaintiffs' redemption of their property, followed by the unasked-for refund check. Plaintiffs contend that their payment extinguished their existing liability, entitling them to a fresh set of procedures. The IRS says that their liability continued. This court finds that the weight of authority rests with plaintiffs.

### A. Plaintiffs' Right to Redeem

■■■ When plaintiffs tendered their checks to Revenue Officer Straughn in October 1981, they were exercising their statutory right to redeem their property. 26 U.S.C. § 6337(a). In the words of one court, "[f]rom the earliest times this right has been clearly recognized and jealously guarded by United States Courts." *United States v. Lowe*, 268 F.Supp. 190, 192 (N.D. Ga.1966), *aff'd sub nom. Lowe v. Monk*, 379 F.2d 555 (5th Cir.1967), *cert. denied* 389 U.S. 1039, 88 S.Ct. 775, 19 L.Ed.2d 827 (1968). The IRS cannot argue that its refund worked to extinguish that redemption, because all a taxpayer need do to exercise the right is to tender the amount due in one of the forms approved by statute. *Guthrie v. Curnutt*, 417 F.2d 764 (10th Cir.1969); *see also United States v. Heasley*, 283 F.2d 422, 428–429 (8th Cir.1960). Checks are a statutorily-approved form of tender. 26 U.S.C. § 6311(a). The redemption occurs at the moment of tender, whether the revenue officer has specifically agreed to the

form of payment, *Lowe*, 268 F.Supp. at 193, or has not, *Guthrie*, 417 F.2d at 765. Even if the officer rejects the tender, the redemption has still occurred. *Id.* at 766; *see also DiFoggio v. United States*, 484 F.Supp. 233, 237 (N.D.Ill.1979). Plaintiffs redeemed their property.

■■■ The act of redemption also extinguished the 1981 levy. By statute, if the taxpayer tenders "the amount due," then "all further proceedings in connection with the levy on such property shall cease from the time of such payment." 26 U.S.C. § 6337(a); *see also* 26 C.F.R. § 301.6337–1.

Presumably the redemption also extinguished the underlying lien, although that point is less clear. According to the applicable statute the lien continues only "until the liability ... is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322. There is authority, however, for the proposition that the lien remains until a certificate of release is formally issued under 26 U.S.C. § 6325. *See Stewart Title & Trust of Phoenix v. Ordean*, 528 F.2d 894, 898 (9th Cir.1976); *United States v. Waite, Inc.*, 480 F.Supp. 1235, 1240 (W.D.Pa.1979). Plaintiffs have not alleged that they received such a certificate. On the other hand, in neither *Stewart Title* nor *Waite* had the liability actually been satisfied. *Stewart Title*, 528 F.2d at 898, involved release of a levy on cash under 26 U.S.C. § 6343(a) so that the lien would attach to a house purchased with the cash. The taxpayer in *Waite*, 480 F.Supp. at 1239, was attempting to benefit from a mistaken application of a tax credit to its account.

Also, both cases preceded Congress' 1982 amendment to § 6325(a), Pub.L. 97–248, 96 Stat. 638, which changed the language from "the Secretary ... *may* issue a Certificate of Release from any lien ... if (1) [he] finds that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied" to "the Secretary *shall* issue a Certificate of Release of any lien ... *not later than 30 days after the day on which*" he finds the liability satisfied (emphasis added). The

changes do not apply to plaintiffs' transaction since the effective date of the change was December 31, 1982, but they may be taken as an indication of Congress' intent on the mandatory character of lien releases when liabilities are satisfied. All in all, considering the statutory language and the equities involved, this court does not think that Congress intended, through § 6325, to give the Service a formalistic means of retaining a lien despite the actual satisfaction of a tax liability. We therefore assume that if the liability was actually satisfied, the lien was also extinguished.

**B. Effect of an Erroneous Refund on Satisfaction of a Tax Liability**

■ The analysis, therefore, must turn to whether plaintiffs' tax liability was actually satisfied. One idea may be dismissed at the outset. The principles of "accord and satisfaction" from ordinary contract law do not apply to the IRS. For example, in *Colebank v. Commissioner*, T.C. Mem. 1977–46, 36 T.C.M. (CCH) 200 (1977), *aff'd mem.* 610 F.2d 999 (D.C.Cir.1979), *cert. denied* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980), the taxpayer had written, "Paid in full," on his $500 check to the IRS. He tried to argue that when the IRS negotiated the check there was an accord and satisfaction which extinguished his entire tax liability. The Tax Court summarily rejected the idea. *Accord: Findlay v. Commissioner*, 39 T.C. 580, 588–589 (1962), *aff'd* 332 F.2d 620 (2d Cir.1964) (*unrelated matter rev'd*); *Parks v. Commissioner*, 33 T.C. 298 (1959).

■ Similarly, the issuance of a refund does not estop the IRS from later collection of an amount the taxpayer owes. In *Warner v. Commissioner*, 526 F.2d 1 (9th Cir. 1975), the taxpayer's return neglected to include items of income which were nevertheless reflected on the W–2 Forms properly attached to the return. The Service ignored the W–2 Forms and issued a refund check, then later sought the correct amount. The court held that the refund had not worked an estoppel. The principle applies whether the act or omission which led to the refund stemmed from the taxpayer or from the IRS. *See United States v. C & R Investments, Inc.*, 404 F.2d 314, 315 (10th Cir.1968) (IRS issued erroneous credit); *Miller v. Commissioner*, 231 F.2d 8, 9 (5th Cir.1956) (IRS approved erroneous tentative carryback adjustment); *White*, 537 F.Supp. at 689 (taxpayer took erroneous dependent deductions); *Baird v. Commissioner*, T.C. Mem. 1981–536, 42 T.C.M. (CCH) 1170 (1981) (taxpayer omitted computation of minimum tax). *See generally Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957).

Those cases, however, are not dispositive of the question here. Plaintiffs do not—at least in this action—challenge the legal right of the IRS to recoup the $2750 if in fact plaintiffs owe it, as long as the IRS uses statutory procedures. Rather, they challenge the Service's right to levy on their bank account without notice of any kind.

No court has held that an erroneous refund gives the IRS a right to an immediate levy without statutory notice. Most courts which have considered the question of how the IRS may pursue an erroneous refund have concluded that it has a choice of methods. It may seek recovery of the sum through the statutory remedy expressly provided for erroneous refunds, 26 U.S.C. § 7405, by filing a suit directly in district court. Alternatively, it may treat the sum as it would any other underpayment, by determining a deficiency and notifying the taxpayer as prescribed in § 6212, and then proceeding, after the 90-day period has passed, to § 6303 assessment, notice and demand. *See, e.g., Warner*, 526 F.2d at 2; *C & R*, 404 F.2d at 315; *Black Prince Distillery, Inc. v. United States*, 586 F.Supp. 1169, 1173 (D.N.J.1984). One court has held that only the § 7405 procedure may be used, *Akers v. United States*, 541 F.Supp. 65, 67 (M.D.Tenn.1981), and another that the IRS may use § 6212 and § 6303 procedures only for interest due on delinquent taxes, while the amount of the refund must be sought under § 7405, *Ideal*

*Realty Co. v. United States,* 561 F.2d 1123, 1125 (4th Cir.1977). In any event, neither method was used here. The IRS did not file a § 7405 suit for recovery of an erroneous refund and it admits in its answer that it sent no new notice of any kind to these taxpayers, relying instead on the notice and demand for tax issued on May 19, 1978, more than three years before the redemption.

The IRS, however, contends that the instant facts cannot be characterized as a case of erroneous refund. The refund for the 1970 tax year was fully justified because the IRS computer had entered an overpayment for that year. Meanwhile, the Service maintains, the taxes due for 1968 went unsatisfied. Thus, the liability for 1968 continued unbroken and neither a § 7405 suit nor a new notice was required.

■ The courts do not agree. First, a refund is not, properly speaking, a tax amount. In *Marshall v. United States,* 158 F.Supp. 793 (E.D.Tex.1958), Internal Revenue had won § 7405 judgments for the return of erroneous refunds from two taxpayers who later were adjudged bankrupt. Since under the Bankruptcy Act sums due as taxes were not debts dischargeable in bankruptcy, the United States claimed a lien on the taxpayers' real property when the judgments remain unpaid. The court denied the lien, holding that the United States had merely been a judgment creditor of the taxpayers and that the judgments were merely debts which had been discharged in bankruptcy. The taxpayers had indeed owed money to the United States, but they had not owed it as a tax liability. 158 F.Supp. at 795.

If a refund is not a tax amount, then the act of sending a refund cannot of itself revive or continue a pre-existing tax liability. In *United States v. Young,* 79–2 U.S.Tax Cas. (CCH) ¶ 9609 (D.Del.1979),

the IRS had assessed a deficiency and filed a tax lien against an individual. He then paid the full amount due. The IRS, however, mistakenly credited the payment to the taxpayer's sole proprietorship account, rather than his individual account. That created an overpayment on that account and generated a refund. Some four years later the IRS filed another lien against the taxpayer grounded on the original assessment. The court held that the taxpayer had extinguished all his assessed liability with his payment. The IRS' mistaken application and refund of the payment did not restore that liability.

■ As long as the IRS had at one time sufficient funds in its hands to cover the tax liability, then, the liability is extinguished. If the IRS misapplies the funds and generates a refund, the refund does not extend the old liability, but at most creates the potential for a new one. In *Groetzinger v. Commissioner,* 69 T.C. 309 (1977), an estate had been assessed two deficiencies and had paid both. An IRS posting error led to an unrequested refund of nearly $20,000 to the estate. The estate cashed the check and distributed the funds. Not quite four years later the IRS discovered its mistake. The Tax Court held that the estate taxes were fully paid after the IRS negotiated the two checks it received from the estate. The refund was erroneous and did not even create a deficiency within the meaning of § 6211.[4] At most, the IRS could claim an underpayment of tax from which, if the taxpayer did not make additional payments, a deficiency could later be determined. 69 T.C. at 314–315. In the case at bar, then, plaintiffs' 1981 redemption functioned to actually satisfy the tax liability assessed in 1978. When the IRS sent them a refund, thanks to its own error, that liability nevertheless remained satisfied.

---

**4.** "Deficiency" in the Internal Revenue Code is a term of art. Generally there is no deficiency until the IRS has formally determined one, absent an affirmative act by the taxpayer such as understating on the return the amount of tax owed. 26 U.S.C. § 6211; *see generally Laing,* 423 U.S. at 179–182, 96 S.Ct. at 483–85 (defining

"deficiency"). In *Groetzinger* there was no deficiency because the erroneous refund could not be characterized as a rebate. The taxpayer was thus entitled to administrative procedures available prior to the § 6212 determination of, and notice of, deficiency. 69 T.C. at 314–315.

The only exception which this court has found to the principle that a liability, once satisfied, remains satisfied does not apply in the instant case. In *Burns v. United States*, 84-2 U.S.Tax Cas. (CCH) ¶ 9820 (S.D.Fla.1984), the court found that an affirmative act from the taxpayer could revive a former liability. In that case, as part of an audit procedure the IRS had stopped payment on three refund checks totalling more than $90,000 and credited the taxpayer's account accordingly. However, the checks remained in her possession and three years later she successfully negotiated them. The court held that the taxpayer's liability had only been apparently satisfied, not actually satisfied, and the IRS could pursue the sum owed on the basis of the old liability. *Burns*, however, is easily distinguishable from the situation here. Plaintiffs took no affirmative steps toward creating their underpayment. Indeed, they did not even request the refund. *Cf. Groetzinger*, 69 T.C. at 315. This case is controlled by *Marshall, Young* and *Groetzinger*. Despite the erroneous refund, plaintiffs actually satisfied the only liability which had been properly assessed against them.

## C. Status of the Levy

■ If a taxpayer has no assessed tax liability, then a § 6303 notice of liability and demand for tax cannot issue, and if there has been no notice and demand, a levy cannot issue. 26 U.S.C. §§ 6303, 6331. In *La Follette v. United States*, 176 F.Supp. 192 (S.D.Cal.1959), the taxpayers had at first understated on their return the amount of tax due, but later filed an amended return. In April 1952 they received a refund check of approximately $600 based on their first return, which they sent back at once. The then Collector of Internal Revenue for their area did not, however, cancel the check and credit their account until September of 1953. In the meantime, the Collector first assessed an over-$600 deficiency and then scheduled an $80 abatement. Then, in October 1953, the taxpayers, to their surprise (and not at their request) received another $600 refund

check. After waiting two months, they cashed this one. Finally, in September 1957, without notice to the taxpayers, the district director levied on the salary of one of them, basing the levy on the 1952 deficiency assessment. The court held that the levy was void. When the taxpayers returned the first refund check, they had satisfied any tax liability they had. The payment of October 1953 was an erroneous refund which could not and did not revive that liability. The levy without notice of 1957 was therefore illegal (and the erroneous refund was uncollectible because the statute of limitations had expired). 176 F.Supp. at 195. *See also Marshall*, 158 F.Supp. at 795.

*La Follette* seems squarely on point. Since the plaintiffs' only outstanding tax liability here was satisfied, the IRS had no authority in July 1982 to levy on plaintiffs' bank account. The Service was not barred from any and all attempts to recover the $2750 merely by the fact of the refund. But it was limited in its attempts to the means which Congress has provided by statute, and a levy without notice was not one of those means.

Clearly, the preferred means would have been to utilize the statute which expressly provides for the recovery of erroneous refunds, 26 U.S.C. § 7405, and to file suit for such recovery in this court. Indeed, *Young* holds that when the liability was actually satisfied, and then the refund is generated solely from an IRS posting error, the Service is limited to an erroneous refund suit. 79-2 U.S.Tax Cas. (CCH) ¶ 9609. However, the Tax Court, whose expertise in the area deserves respect, held · on similar facts that § 7405 was not an exclusive remedy. Quoting legislative history, it concluded that Congress merely intended to give the IRS an alternative in the case of erroneous refunds that would increase its opportunities to recover them. An erroneous refund, even from a posting mistake, could still be pursued by the usual deficiency and assessment procedures. *Groetzinger*, 69 T.C. at 312–313. This analysis seems more persuasive.

Nevertheless, whichever method was appropriate, the levy is void. If the IRS should have used § 7405, then the levy is void because § 7405 does not authorize a pre-suit levy procedure. Also by its own admission, the IRS did not use § 7405. If the usual deficiency and assessment procedure was available, the levy is still void for lack of notice to the taxpayer and lack of opportunity to pay the amount due. The Tax Court's analysis in *Groetzinger* is persuasive. The refund created at most an underpayment. 69 T.C. at 316. Plaintiffs were therefore entitled to at least three procedural steps before a levy could issue: (1) a determination of a deficiency and notice of same under § 6212 (the "90-day letter"), with its opportunity to litigate the determination in the Tax Court; (2) assessment of the new tax liability after the Tax Court adjudication or not less than 90 days after that notice, and (3) a § 6303 notice of assessment and demand for tax. In addition, by the express language of § 6331 the IRS could not levy for ten days after the § 6303 notice and demand.[5] The IRS admits that it has issued no notice since 1978 and has made no new assessment. One court has found that where the IRS and the taxpayers are in frequent communication, informal verbal notice from the revenue officer can substitute for formal written notice. *Hahn v. United States*, 77-1 U.S.Tax Cas. (CCH) ¶ 9334 (C.D.Cal.1977). No court, however, has suggested that a

procedural step can simply be omitted, let alone three of them. These steps can of course be condensed or omitted in a jeopardy assessment and levy, but the IRS has not suggested that it was following jeopardy procedures. And even if it had been, it still must grant the taxpayer some opportunity, however short, to pay the tax before levying on his bank account. *L.O.C.*, 423 F.Supp. at 273. The taxpayers are therefore entitled to release of the levy. If the IRS still wishes to pursue the amount which it erroneously refunded to plaintiffs, it may either determine a deficiency and send them § 6212 notice, giving them a chance to litigate the deficiency in the Tax Court, or bring a § 7405 suit for the amount of the refund against them in this court.[6] *See La Follette*, 176 F.Supp. at 195; *Williams v. United States*, 373 F.Supp. 71, 81–82 (D.Nev.1973) (enjoining levy and ordering § 6212 notice).

This court holds, therefore, that the levy is void for lack of Internal Revenue Service compliance with the statutory prerequisites for a levy. It should and must be enjoined under the authority granted to this court by 26 U.S.C. § 6213(a).

### III. Claim for Damages Against the Levying Officer

Plaintiffs' claim for damages against Revenue Officer Straughn, however, is a different matter.[7] Because this court

---

5. Plaintiffs are, however, incorrect in their contention that they were owed notice of levy under 26 U.S.C. § 6331(d). That provision was a part of the 1982 amendments to the Code and did not apply to transactions during 1982.

6. The IRS may now be barred from collecting the amount of the erroneous refund through either of these methods by the applicable statutes of limitations. A § 7405 suit for recovery of erroneous refund has a two-year statute of limitations which begins to run at the time the refund is made. 26 U.S.C. § 6532(b). In the case at bar, the refund was issued in December 1981. If the procedures applicable to any other underpayment are used, the IRS must make a formal assessment of liability (§ 6201, § 6203) within three years after the date the taxpayer filed the applicable return, *see* 26 U.S.C. § 6501(a), although once assessed, the IRS has six years after the assessment in which to collect

the liability. 26 U.S.C. § 6502(a). Since the erroneous refund does not relate to an old liability, presumably it would be characterized as income which accrued in 1981 and went unreported on plaintiffs' return. Assuming that they timely filed their 1981 return by April 15, 1982, then § 6501 would seem to require an assessment by April 15, 1985. However, it is also possible that plaintiffs' filing of this suit tolled the limitation period.

This court need not decide the question since plaintiffs' complaint, though alleging loosely that defendant "did not follow the provisions of section 7405," does not specifically plead the statute of limitations. The question could, however, be appropriately litigated in the Tax Court if and when plaintiffs finally receive their § 6212 notice.

7. For the reasons given in note 1, *supra*, this court concludes that plaintiffs have abandoned

doubts that the conduct alleged rises to the level of a constitutional violation, and is certain that in any case we cannot create a damages remedy against individual officers for taxpayers who have suffered only the limited deprivation of property rights complained of here, the motion to dismiss count II will be granted.

### A. Unlikelihood of Constitutional Infringement

 The revenue officer's conduct, by the preceding analysis, indeed failed to comply with the statutes for deficiencies and levies such as § 6212, § 6303 and § 6331. But every unlawful act committed by an Internal Revenue agent is not automatically also an unconstitutional act simply because he is a federal official and operates under federal statutes and regulations. *United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979) (failure to obtain prior approval from Attorney General for electronic monitoring of adjustment conversation in which bribe offer was expected); *Dema v. Feddor,* 470 F.Supp. 152, 156 (N.D.Ill.1979), *aff'd mem.* 661 F.2d 937 (7th Cir.1981), *cert. denied* 455 U.S. 941, 102 S.Ct. 1433, 71 L.Ed.2d 651 (1982) (investigation beyond scope authorized by Internal Revenue Code). To state a claim in count II, plaintiffs must allege not just unlawful conduct but infringement of a constitutional right.

the apparent claim in their complaint which sought damages from the United States. A claim for damages "arising in respect of the assessment or collection of any tax" is in any case barred by sovereign immunity. 28 U.S.C. § 2680(c); *see Murray v. United States,* 686 F.2d 1320 (8th Cir.1982), *cert. denied* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983). Most courts would find Revenue Officer Straughn similarly immune from the common-law torts of conversion and intentional infliction of emotional distress which plaintiffs also initially alleged and presumably have given up. *See, e.g., Hall v. United States,* 704 F.2d 246, 249 (6th Cir.), *cert. denied* 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983); *Capozzoli v. Tracey,* 663 F.2d 654 (5th Cir.1981). *Cf. Tarkowski v. County of Lake,* 775 F.2d 173 (7th Cir.1985) (malicious prosecution not a constitutional tort). Further, even if intentional infliction of emo-

 The gist of plaintiffs' complaint is that they were deprived of the use of their property without advance notice and an opportunity to contest the deprivation, which they argue violates the due process clause of the Fifth Amendment. It is true that, other considerations being equal, due process strongly encourages prior notice and a hearing before persons are separated from their property. *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). But prior notice and hearing is not always necessary even when a mere installment seller seeks to repossess a refrigerator, if a procedure is available after the deprivation. *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 611, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974). And when the property is sought to satisfy taxes, and the seeker is the United States, other considerations are distinctly not equal. *Fuentes,* 407 U.S. at 92, 92 S.Ct. at 2000. As Justice Brandeis wrote for the Supreme Court in *Phillips v. Commissioner,* 283 U.S. 589, 595–597, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931), when internal revenue is at stake,

> [p]roperty rights must yield provisionally to governmental need.... Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate. Delay in the judicial determination of property rights is not uncommon where it is essen-

tional distress is in some circumstances an exception to immunity doctrines, as one court concluded when the Army badly mishandled its communications with parents after their son was shot by a fellow soldier, *Kohn v. United States,* 680 F.2d 922, 926 (2d Cir.1982), and even if the act of levying on a taxpayer's property is not always a "discretionary function" within the meaning of *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1954), as another court found for a jeopardy assessment and levy, *G.M. Leasing Corp. v. United States,* 560 F.2d 1011, 1014 (10th Cir.1977), *cert. denied* 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516 (1978), the complaint here also fails to state a claim for emotional distress under Illinois law, which requires far more extreme and outrageous conduct than that which these plaintiffs allege. *See Public Finance Corp. v. Davis,* 66 Ill.2d 85, 360 N.E.2d 765, 4 Ill.Dec. 652 (1976).

tial that governmental needs be immediately satisfied.

(citations omitted). *See also Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (no evidentiary hearing required before terminating Social Security disability payments). Therefore there is no question that, for example, if collection of taxes is in jeopardy, the IRS can constitutionally seize the property first and allow for notice and a judicial determination later. *Shapiro*, 424 U.S. at 622 n. 7, 96 S.Ct. at 1068 n. 7; *Laing*, 423 U.S. at 183 n. 26, 96 S.Ct. at 485 n. 26. The post-deprivation remedy provides all that the Constitution requires.

Further, since public policy strongly favors the collection of taxes, unquestionably the IRS agents who collect them have a certain margin of error before they have infringed on the taxpayer's Fifth Amendment rights. *Cameron v. Internal Revenue Service*, 773 F.2d 126 (7th Cir.1985). In *Cameron* the agents had allegedly handled the taxpayer's problem in an insensitive manner and made mathematical mistakes which caused the file to be turned over for collection. The Seventh Circuit found no invasion of constitutional rights, saying that "[c]onduct too trivial in its impact on a normal person even to be a common law tort is unlikely to be a deprivation of constitutionally protected liberty." 773 F.2d at 129. There is a difference between a mistake made out of honest zeal for collection and enforcement and an unconstitutional abuse of power.

Just where plaintiffs' allegations fall on this spectrum is not entirely clear. Unlike the plaintiff in *Cameron,* they were actually deprived of the use of their property. However, as *Phillips* held over a half-century ago, due process is normally not implicated when revenue officers summarily take control of property as long as the taxpayer eventually has access to some method of judicial review. 283 U.S. at 597–598, 51 S.Ct. at 611–12. *Phillips* upheld a statutory summary procedure, while the agent here acted outside the statutes, but the broad principle would seem to be the same. *Cf. Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (identical clause in Fourteenth Amendment not implicated when post-deprivation remedy available); *W.T. Grant*, 416 U.S. at 611–614, 94 S.Ct. at 1902–03. *But see Omnibus Financial Corp. v. United States*, 566 F.2d 1097 (9th Cir.1977) (implying that an allegation that a revenue officer failed to follow statutory procedures in making a levy could state a constitutional claim). As this court has today determined, these taxpayers have a post-deprivation remedy under § 6213(a). Indeed, this very action has granted them injunctive relief.

Frankly, for an error in the tax collection process to rise to the level of a constitutional violation, one expects allegations more like those in *Rutherford v. United States*, 702 F.2d 580 (5th Cir.1983), where the plaintiffs claimed repeated IRS harassment lasting a year and a half, including patently unjustified assessments and abusive displays of authority culminating in Christmas Eve home delivery of the audit report. *Rutherford* held that the taxpayers had a constitutional claim, but that holding expressly did not rest on the deprivation of over $27,000 of their property which the allegedly unfounded assessments had caused. Rather, it found an injury to their liberty interest also protected by the due process clause in the "mental anguish" caused by "a lawless and arbitrary vendetta fueled by the power of the state," 702 F.2d at 584, and allowed the action only for those damages. Plaintiffs here allege emotional distress from "wanton, willful and malicious acts," but in fact their complaint alleges one act, an improper levy on their bank account. This court doubts that one such mistake, even though it deprived plaintiffs of control of their property for a time, is a constitutional violation when the levy can later be enjoined. *See Cameron*, 773 F.2d at 128 (suggesting no violation where "the wrong to the taxpayer can easily be set right through the legal procedures created by the tax code itself"). We need not decide whether there are no circumstances under which an improper levy could implicate the Fifth Amendment. Un-

der these circumstances, we think, the improper levy here does not.

## B. Absence of a Remedy in Damages

However, even if the above analysis has somewhere gone astray, the count can be dismissed on another ground. Given the context of tax collection, plaintiffs have no remedy in damages against the revenue officer.

Plaintiffs' count II seeks damages from Agent Straughn on the model of *Bivens v. Six Unknown Named Federal Narcoticvs Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *Bivens* created a damage remedy against federal agents for egregious Fourth Amendment violations. Since then, the Supreme Court has allowed a *Bivens*-type remedy grounded in the equal protection clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and permitted a *Bivens* action against IRS officers for a Fourth Amendment violation, *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977). Plaintiffs argue that therefore a damage remedy should exist for an IRS' officer's conduct when it infringes the property interests protected by the due process clause of the Fifth Amendment.

■ A *Bivens* action, however, does not automatically materialize for every constitutional infringement. For example, even though a damage remedy can sometimes flow from the equal protection clause of the Fifth Amendment, soldiers cannot seek damages from their superior officers for unconstitutional racial discrimination. Such a remedy would be irreconcilable with the military's need for strict discipline. *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). In particular, while the federal courts have the power to grant forms of relief which are not specifically authorized by statute, that power should be exercised with due respect for the policy determinations Congress has made. *Bush v. Lucas*, 462 U.S. 367, 373, 103 S.Ct. 2404, 2408–09, 76 L.Ed.2d 648 (1983). A damage remedy should not be

manufactured where Congress has not authorized one if there are "special factors counselling hesitation," or where examination of the relevant statutes leads to the conclusion that "Congress has provided an alternative remedy." *Carlson v. Green*, 446 U.S. 14, 18, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980).

The question of a damage remedy for a limited deprivation of property rights during tax collection implicates both concerns. *Bivens* itself, as an illustration of the kind of "special factors" it meant, spoke expressly of "a question of federal fiscal policy." 403 U.S. at 396, 91 S.Ct. at 2004–05; *see also Bush*, 462 U.S. at 379, 103 S.Ct. at 2411–12. It is hard to imagine a question more directly related to federal fiscal policy than one involving taxes and tax collection. The factors here thus counsel hesitation.

The elaborate remedial scheme already in place, representing Congress' determination of where to strike the balance between individual property rights and government revenue needs, counsels not merely hesitation but outright denial. In *Bush*, the Supreme Court declined to add a damages remedy to those already available to federal employees through the Civil Service Commission. The Court stated:

> The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy.... The policy judgment should be informed by a thorough understanding of the existing regulatory structure and the respective costs and benefits that would result from the addition of another remedy....

462 U.S. at 388, 103 S.Ct. at 2416. *See also Chappell*, 462 U.S. at 301–04, 103 S.Ct. at 2366–67 (deference to remedial structure Congress chose in developing military system of justice).

These considerations apply with even greater force to the case at bar. In the

elaborate remedial system of the Internal Revenue Code, Congress has made its determinations of how to weigh the conflicting policy considerations and of what the costs and benefits of various remedies would be. It is one thing for a court to create a damage remedy when IRS agents employ unconstitutional searches and seizures, *G.M. Leasing Corp.*, 429 U.S. at 360, 97 S.Ct. at 632, or use their powers to repeatedly harass taxpayers, *Rutherford*, 702 F.2d at 584, and quite another to presume that an additional remedy is needed when the issue goes to the heart of the tax collection process. As the Seventh Circuit said in *Cameron*, 773 F.2d at 129, "it would make the collection of taxes chaotic if a taxpayer could bypass the remedies provided by Congress simply by bringing a damage action against Treasury employees." Congress has provided the plaintiffs in the case at bar with a remedy, the injunction for the release of the levy under § 6213(a), which this court today grants. It has not authorized an action for damages. This court should not disturb the balance which Congress has struck between property rights and federal revenue needs by tacking on another remedy.

■■■ This court therefore holds that no damage remedy is available to these plaintiffs in an action against Revenue Officer Straughn.[8] Count II must therefore be dismissed.

## CONCLUSION

Defendants' motion to dismiss, or in the alternative for summary judgment, is denied as to count I and granted as to count II. Plaintiffs' motion for summary judgment on count I is granted. The Internal

---

**8.** Straughn may also be immune from liability. He would not have absolute immunity, as the IRS contends, since even the Attorney General when acting under Presidential authority in the interest of national security does not have absolute immunity. *Mitchell v. Forsyth*, 472 U.S. ——, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Cameron*, 773 F.2d at 128. He would, however, have qualified "good faith" immunity: immune unless his conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*

Revenue Service levy of July 28, 1982, on the account of Alfred and Marguerite Rodriguez at the Belmont National Bank of Chicago is illegal and without effect, and the Internal Revenue Service is ordered to release said levy immediately.

---

*v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Hall*, 704 F.2d at 249–50; *Eske*, 601 F.Supp. at 143. In an ordinary situation, of course, a taxpayer's statutory right to § 6212 and § 6303 notice would be about as clearly established as a right can be. Whether a reasonable person would have known that these plaintiffs were entitled to a fresh start after the redemption, refund, and confusion which reigned here, however, is another question which thanks to the above holding we need not reach.