February 26, 1993

[NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1723

GILBERT T. GONSALVES,

Plaintiff, Appellant,

v.

INTERNAL REVENUE SERVICE, ET AL,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

Before

Breyer, Chief Judge,

Torruella and Cyr, Circuit Judges.

Gilbert T. Gonsalves on brief pro se.

James A. Bruton, Acting Assistant Attorney General, Gary R.

Allen, Richard Farber, Curtis C. Pett, Attorneys Tax Division,

Department of Justice, and Richard S. Cohen, United States

Attorney, on brief for appellees.

Per Curiam. Between 1979 and 1985 the appellant,

Gilbert Gonsalves, worked in the Panama Canal Zone for the

Panama Canal Commission. He believed that the Panama Canal

Treaty gave an exemption from United States income taxes to

American employees of the Commission. In 1986, the United

States Supreme Court decided that the treaty had not created

such an exemption. O'Connor v. United States, 479 U.S. 27

(1986).

By the time the Supreme Court answered the underlying

question, however, Mr. Gonsalves and the IRS were locked in a

quarrel over the extent of Mr. Gonsalves' tax liability. The

IRS had received some tax payments, but said that Mr.

Gonsalves still owed money to the government; Mr. Gonsalves

said that he had overpaid. The IRS made at least one

assessment, for tax year 1981, and in March 1988 it collected

some of the amount assessed by levying upon a bank account

that belonged to Mr. Gonsalves. See generally Gonsalves v.

Internal Revenue Service, 975 F.2d 13, 14 (1st Cir. 1992)

(per curiam).

Although the remedies were available to him, Mr.

Gonsalves neither challenged the IRS' calculation of a tax

deficiency by filing a petition for redetermination in the

Tax Court, nor attempted to recover the taxes paid by filing

a refund action in the district court. See 26 U.S.C.

6213, 7422. He has, however, twice sought to recover damages

-2-

for transgressions that he says IRS officials committed

during the course of their dealings with him. Mr. Gonsalves

claims that IRS officials violated his rights in three ways:

(1) by denying him an administrative appeal despite his "many

verbal and written requests;" (2) by seizing the funds in his

bank account without giving him proper notice of their

intention to levy; and (3) by failing to respond to his

inquiries and settle his differences with the agency in a

"prompt and timely" manner.

Mr. Gonsalves first attempted to recover damages in a

suit he filed in 1991 in the United States District Court for

the District of Maine. The 1991 complaint named the Internal

Revenue Service as the only defendant, and asserted claims

under both the United States Constitution and the "Taxpayer

Bill of Rights." 26 U.S.C. 7433. The district court gave

judgment to the IRS, and we affirmed. 975 F.2d at 15-17.

In January 1992 Mr. Gonsalves filed the complaint before

us now. Although this complaint again names the IRS as a

defendant, it also names, and its true targets appear to be,

the district directors of the IRS offices in Andover,

Massachusetts, Augusta, Maine, and Philadelphia, Pennsylvania

(who are identified only by title), and Paul Chinouard, a

"problem resolution officer" at the IRS office in Portland,

Maine.

-3-

The allegations in the 1992 complaint echo those made in

the 1991 complaint. However, Mr. Gonsalves now contends that

he is entitled to recover directly from the IRS officials who

violated his rights, pursuant to the doctrine first described

in Bivens v. Six Unknown Named Agents of Federal Bureau of

Narcotics, 403 U.S. 388 (1971). The district court ruled

that the defendants were entitled, at the very least, to

"qualified immunity," and dismissed the complaint. This

appeal followed. We affirm.

I

"Bivens actions lie only for violations of rights

secured by the Constitution." Bothke v. Fluor Engineers &

Constructors, Inc., 834 F.2d 804, 814 (9th Cir. 1987)

(Beezer, J., concurring). Mr. Gonsalves claims that the

defendants violated the Due Process Clause of the Fifth

Amendment, which says that the federal government cannot

deprive a person of life, liberty, or property "without due

process of law." The amended complaint did allege a

deprivation of property -- the seizure of money in Mr.

Gonsalves' bank account -- but the record contains no factual

basis from which one could infer that this deprivation

occurred without due process of law.

When the government takes a person's property, due

process requires that it give him notice and an opportunity

to be heard "at a meaningful time and in a meaningful

-4-

manner." Fuentes v. Shevin, 407 U.S. 67, 80 (1972) (quoting

Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). Generally,

"at a meaningful time" means "notice and a hearing before

persons are separated from their property," Rodriguez v.

United States, 629 F.Supp. 333, 347 (N.D.Ill. 1986) (emphasis

added), although in some circumstances -- for example, when

the IRS perceives that its ability to collect taxes will be

jeopardized by delay -- a post-deprivation hearing may

adequately protect due process rights. See Phillips v.

Commissioner, 283 U.S. 589, 595-97 (1931); Rodriguez v.

United States, 629 F.Supp. at 348.

Except where the IRS makes such a "jeopardy" assessment,

the Internal Revenue Code requires that it give a taxpayer

notice before it takes his property, and provide the taxpayer

with a choice whether to be heard before or after the

deprivation. The procedure is as follows: once the IRS

determines that a taxpayer owes money to the government, it

must issue a notice of the deficiency, then wait 90 days

before attempting to collect the taxes due. 26 U.S.C.

6213(a). If the taxpayer wants a pre-deprivation hearing, he

can, during those 90 days, file a petition with the Tax Court

asking it to redetermine the deficiency, and the stay against

collection efforts will remain in effect while the petition

is pending. Id. Or the taxpayer can forego a Tax Court

-5-

hearing, pay the tax, and seek a refund in a post-deprivation

action in the district court. 26 U.S.C. 7422.

The taxpayer may receive, and may even be entitled by

statute or regulation to receive, extra process, such as an

administrative appeal, a notice of levy, and prompt responses

to his inquiries. But, because his "due process rights are

adequately protected by the statutory scheme which allows him

to contest his tax liability in the Tax Court prior to paying

the disputed tax or to sue for a refund in federal district

court . . . ," Stonecipher v. Bray, 653 F.2d 398, 403 (9th

Cir. 1981) (citing Phillips v. Commissioner, 283 U.S. at

595), these additional procedures are not constitutionally

required. For example, once the taxpayer has either

resorted to or waived a Tax Court hearing, the IRS can, as it

did here, make a formal assessment and then levy upon the

taxpayer's property to satisfy the deficiency. See 26 U.S.C.

6203, 6331. However, before it can perform the levy, 26

U.S.C. 6331(d) requires the IRS to issue notice of its

intention to levy, and to deliver the notice to the taxpayer

personally, or to mail it to his last known address.

In this case, the district court that tried the claims

in the 1991 complaint found that the IRS had mailed the

notice to the wrong address. 975 F.2d at 15. The ensuing

levy therefore may have violated the statute. But, the

mistake did not deprive Mr. Gonsalves of an opportunity to

-6-

file a petition in the Tax Court (an opportunity he had

already waived by the time of the levy), or to institute a

refund action in the district court (an opportunity that

remained available to him after the levy). It therefore did

not deny him due process of law. See Baddour, Inc. v. United

States, 802 F.2d 801, 807 (5th Cir. 1986); Zernial v. United

States, 714 F.2d 431, 435 (5th Cir. 1983); Rodriguez v.

United States, 629 F.Supp. at 347 (wrongful levy does not in

itself deny due process).

For the same reason, there is no constitutional

substance to Mr. Gonsalves' claims that the defendants (1)

refused to provide him with an administrative appeal, and (2)

ignored his inquiries and otherwise delayed the resolution of

his differences with the agency. Mr. Gonsalves may have had

a "right," created by the IRS' Statement of Procedural Rules,

to an informal administrative appeal. See 26 C.F.R.

601.106. But because the statutory mechanisms for

challenging agency actions in the courts offer due process to

taxpayers who face deprivations of property by the IRS, the

appeals procedure is not constitutionally necessary. See

Rosenberg v. Commissioner, 450 F.2d 529, 533 (10th Cir. 1971)

(provisions in Statement of Procedural Rules "not designed to

protect the constitutional rights of the taxpayer"). See

also United States v. Horne, 714 F.2d 206, 207 (1st Cir.

1983). The violation of a regulation which the Constitution

-7-

does not require an agency to adopt does "not raise

constitutional questions." United States v. Caceres, 440

U.S. 741, 752 (1979).

Similarly, Mr. Gonsalves may have been entitled to

responses to his inquiries and cooperation with his efforts

to resolve his tax problems -- although he has not identified

the statute or regulation that confers such a right. But

again, notwithstanding the defendants' alleged inattention

and uncooperativeness, constitutionally-adequate process

remained available, in the form of a Tax Court petition or a

refund action, to ensure that the government kept no more

than its legal share of Mr. Gonsalves' income. The

underlying property interest did not go unprotected.

The defendants' alleged misbehavior, it is true, may

have deprived Mr. Gonsalves of the IRS' assistance in

vindicating that interest. However, such assistance is

itself neither a "liberty" nor a "property" interest whose

deprivation is capable of redress through a Bivens action.

See Francis-Sobel v. University of Maine, 597 F.2d 15, 18

(1st Cir. 1979). "In order to state a legally cognizable

constitutional claim, [Mr. Gonsalves needed to] allege more

than the deprivation of the expectation that the agency

[would] carry out its duties." Council of and for the Blind

v. Regan, 709 F.2d 1521, 1533-34 (D.C.Cir. 1983) (en banc)

(emphasis in original). See also Cameron v. Internal Revenue

-8-

Service, 773 F.2d 126, 128-29 (7th Cir. 1985) (allegations

that IRS agents subjected taxpayer to unnecessary

inconvenience and failed to explore possibilities of

settlement did not describe denial of due process); American

Association of Commodity Traders v. Department of Treasury,

598 F.2d 1233, 1236 n.2 (1st Cir. 1979) ("not clear that

every loss of potential help from a bureaucrat is a loss of a

constitutional interest").

II

In his reply brief, Mr. Gonsalves cites Rutherford v.

United States, 702 F.2d 580 (5th Cir. 1983). Rutherford

suggested that a taxpayer may have, in addition to a

"property" interest in his tax dollars, a substantive

"liberty" interest in freedom from abuse and harassment by

IRS officials. See also Bothke v. Fluor Engineers &

Constructors, Inc., 834 F.2d 804, 811 (9th Cir. 1987).

However, the existence of such a liberty interest is, at

present, more a matter of conjecture than of settled

interpretation of the Due Process Clause. The Fifth Circuit

has made it clear that its decision in Rutherford "did not

hold that the alleged conduct violated a protected 'liberty'

interest." Morales v. Haynes, 890 F.2d 708, 710 (5th Cir.

1989). Rather, the Rutherford panel, cautioning that

"[i]mplication of nontextual substantive rights from the

-9-

general monitions of the due process clause is a matter not

to be undertaken lightly," only remanded to the district

court with instructions to determine whether "the due process

clause actually does create in taxpayers a liberty interest

in freedom from abusive behavior [by IRS officials]."

Rutherford, 702 F.2d at 584. And, other courts have said

that the infliction of emotional injury by government

officials is a tort without constitutional dimensions. See,

e.g., Conner v. Sticher, 801 F.2d 1266, 1269 (11th Cir.

1986); Vasquez v. City of Hamtramck, 757 F.2d 771, 773 (6th

Cir. 1985) ("A citizen does not suffer a constitutional

deprivation every time he is subjected to the petty

harassment of a state agent"); Buikema v. Hayes, 562 F.Supp.

910, 911 (N.D.Ill. 1983); Taylor v. Nichols, 409 F.Supp. 927,

936 (D.Kan. 1976); Dear v. Rathje, 391 F.Supp. 1, 9 (N.D.Ill.

1975). See also Paul v. Davis, 424 U.S. 693, 710 (1976)

(interest in reputation neither liberty nor property

guaranteed against state deprivation without due process);

Gumz v. Morissette, 772 F.2d 1395, 1408 (7th Cir. 1985)

(Easterbrook, J., concurring) (interest in freedom from

gratuitous fright or shock not a liberty interest).

We need not decide here whether the Due Process Clause

guarantees freedom from abuse by IRS agents. Defendants to

Bivens actions enjoy the same "qualified immunity" that state

officials have in the context of civil rights actions brought

-10-

under 42 U.S.C. 1983. Butz v. Economou, 438 U.S. 478, 504

(1978). This means that they "generally are shielded from

liability for civil damages insofar as their conduct does not

violate clearly established . . . constitutional rights of

which a reasonable person would have known." Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982). "The contours of the

right must be sufficiently clear that a reasonable official

would understand that what he is doing violates that right."

Anderson v. Creighton, 483 U.S. 635, 640 (1987).

In the absence of any cases expressly recognizing a

liberty interest in freedom from harassment by government

officials, we must conclude that the right has not been

"clearly established." Consequently, to the extent that the

complaint even raised an issue of substantive due process, we

agree with the district court that the defendants were

entitled to dismissal on grounds of qualified immunity.1

1. The complaint in Rutherford "sketche[d] a portrait of a

lawless and arbitrary vendetta fueled by the power of the
state, designed to harass by unwarranted intrusion into the
minutia of [the plaintiffs'] financial affairs, and intended
to abuse by the creation of palpably unfounded claims against
their property . . . ." 702 F.2d at 584. Mr. Gonsalves, on
the other hand, made no specific factual allegations of
abuse, but merely stated as conclusions that the IRS had used
"harassment and delays," and "threats without basis or
legitimate foundation" in its dealings with him. Even a pro

se plaintiff must plead some specific facts in support of his

claims of civil rights violations. Hurney v. Carver, 602

F.2d 993, 995 (1st Cir. 1979). We would, therefore, affirm
the dismissal even if the constitutional right asserted were
so "clearly established" as to preclude granting qualified
immunity.

-11-

The judgment of the district court is affirmed.

-12-