**James W. CUNNINGHAM, Trustee,
Thomas L. Freytag, and
Sharon N. Freytag,**

v.

**UNITED STATES of America COMMIS-
SIONER OF INTERNAL REVE-
NUE, and Richard Zanarini.**

**Civ. No. 3:90–CV–0001–H.**

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 4, 1993.

---

Werner A. Powers, Haynes & Boone, and William D. Elliott, Cowles & Thompson, Dallas, TX, for plaintiffs.

Louis G.P. Hytken, U.S. Dept. of Energy, Tax Div., Dallas, TX, for defendants.

Charles B. Hendricks, Dallas, TX, for trustee.

### MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court are United States' Motion to Dismiss or For Summary Judgment, and supporting materials, filed June 23, 1993; Plaintiffs' Response to United States' Motion to Dismiss or for Summary Judgment, and supporting materials, filed July 30, 1993; United States' Reply to Plaintiffs' Response to United States' Motion, and supporting materials, filed August 16, 1993; Trustees and Debtors Objections to and Motion to Strike Evidence, with supporting brief, filed July 30, 1993; United States' Opposition to Trustee and Debtors Objections, with supporting brief, filed August 19, 1993; Plaintiffs' Motion to Strike Evidence, filed August 26, 1993; and United States' Opposition thereto, filed September 7, 1993.

### I. PLAINTIFFS' MOTIONS TO STRIKE EVIDENCE

Plaintiffs have filed two motions to strike evidence relied upon by the IRS in its Motion for Summary Judgment and in its Reply. After consideration, Plaintiffs' Motions are DENIED. See Fed.R.Evid. 803(6), 803(8); United States v. Colyer, 571 F.2d 941 (5th Cir.), cert. denied 439 U.S. 933, 99 S.Ct. 325, 58 L.Ed.2d 328 (1978); United States v. Reese, 568 F.2d 1246 (5th Cir.1977). The Court finds that it may consider all the evidence submitted with the parties respective filings in order to decide this Motion for Summary Judgment.

### II. HISTORY

This case is another chapter in the lengthening saga of Plaintiffs dogged attempts to avoid payment of tax liability determined by the U.S. Tax Court in 1987. This saga began in 1978 when Thomas and Sharon Freytag invested in forward contract straddles on Government National Mortgage Association (GNMA) and Federal Home Loan Mortgage Corporation (FMAC) securities offered by First Western Government Securities (First Western). The goal of these investments was to create immediate tax losses for the investors while deferring gains. The goal was achieved admirably well, as the Freytags managed to record some four hundred and forty thousand dollars ($440,000) of tax losses between 1979 and 1982. Freytag v. C.I.R., 904 F.2d 1011, 1014 n. 6 (5th Cir.1990).

Unfortunately for the Freytags (and the three thousand other participants in First Western's offering), on October 21, 1987, the Tax Court determined that the investments were a "sham" and disallowed the tax benefits which accrued thereunder. Freytags v. Commissioner of Internal Revenue, 89 T.C. 849, 1987 WL 45307 (1987). The Freytags timely appealed the Tax Court's decision to the Fifth Circuit, arguing that the procedures used by the Tax Court to determine that the investments were a sham were improper and unconstitutional. On July 6, 1990, the Fifth Circuit found the procedures of the Tax Court to be constitutional and affirmed the Tax Court's holding. Freytag v. C.I.R., 904 F.2d 1011 (5th Cir.1990), aff'd 501 U.S. 868, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991).

While the Freytags were pursuing their appeal, much occurred. On August 7, 1989, the Internal Revenue Service assessed taxes, penalties and interest against the Freytags and commenced collection activities. Whether this assessment was valid is the currently contested issue. Based on the assessment the IRS filed notices of tax liens on September 14, 1989, and October 10, 1989. See Plaintiffs' First Amended Complaint, filed June 9, 1993, at p. 3–4, ¶ 8; Defendants' Answer, filed June 24, 1993, at p. 3, ¶ 8. On January 2, 1990, the Freytags filed in this Court their Request for Declaratory Judgment, Temporary Restraining Order and Injunctive Relief, in which they presented an argument identical to the argument they had presented in their pending appeal to the Fifth Circuit. On January 5, 1990, the Court denied the Freytags' Request. On that same

afternoon, the Freytags filed for bankruptcy, and the Court stayed proceedings in this case on January 10, 1990.

Two and a half years later, on August 5, 1992, Plaintiffs filed an adversary proceeding in bankruptcy court alleging that in making the assessment, the IRS failed to follow proper procedures and falsified documents. During discovery for the adversary proceeding, Plaintiffs, for the first time, viewed the original 23C certificate on which they base their complaint. *See* Plaintiffs' Response at p. 6. Also during discovery for the adversary proceeding, Plaintiffs deposed Richard Zanarini, the person who signed the 23C certificate. *Id.*

On September 23, 1992, the IRS filed a proof of claim in the bankruptcy court based on the contested assessment. *See* Declaration of Werner Powers, Ex. E (Proof of Claim). On June 9, 1993, Plaintiffs filed their First Amended Complaint and Application for Declaratory Relief and Jury Demand in this Court, alleging, as they had in the adversary proceeding, that the IRS had failed to follow proper procedures in making the assessment and had falsified documents related to the assessment. In particular, Plaintiffs allege that the assessment was untimely, was signed by someone without authority to sign it, did not contain all the necessary papers at the time it was made and that the missing papers were later falsified and added to the assessment. This Court re-opened the case on June 17, 1993. The IRS filed its Answer on June 24, 1993.

On July 20, 1993, the reference in the adversary proceeding was withdrawn, and the adversary proceeding was transferred to this Court. On August 4, 1993, the Court entered an agreed order to consolidate the adversary proceeding with this case.

The IRS now moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or, alternatively, moves for summary judgment pursuant to Fed. R.Civ.P. 56. Because the Court has consid-ered material outside the pleadings, Defendant's Motion will be treated as one for summary judgment.

## III. ANALYSIS

### A. JURISDICTION

#### 1. Exhaustion of Administrative Remedies

■ The IRS first argues that this Court lacks jurisdiction because Plaintiffs have not exhausted their administrative remedies. Specifically, the IRS argues that in order for the Plaintiffs to be able to sue the IRS, the IRS must waive sovereign immunity. The Internal Revenue Code provides a conditional waiver of sovereign immunity, 26 U.S.C. § 7433, but to invoke that waiver, the IRS argues, the Plaintiffs must comply with the conditions of the statute. Section 7433(d) requires that the Plaintiffs exhaust their administrative remedies, and, as the IRS points out, the Treasury Regulations spell out exactly what administrative remedies are available to the Plaintiffs. Treas.Reg. § 301.-7433-1. Since the Plaintiffs have not complied with the Treasury Regulations, the IRS argues, they have not exhausted their administrative remedies, and cannot bring an action under § 7433.

The Plaintiffs do not deny that they have not exhausted their administrative remedies, nor do they deny that their action arises under § 7433. Rather, the Plaintiffs argue that the IRS has waived its sovereign immunity by filing a claim in the Plaintiffs' bankruptcy proceedings. Plaintiffs argue that 28 U.S.C. § 1334 grants the district courts jurisdiction over cases under Title 11. Plaintiffs then point to 11 U.S.C. § 106 and argue that the filing of a claim in a bankruptcy proceeding constitutes a waiver of sovereign immunity [1]. Plaintiffs conclude that since the IRS waived its sovereign immunity by filing a proof of claim in the bankruptcy proceeding,

---

1. Plaintiffs also argue that they need not exhaust their administrative remedies where exhaustion "would be a useless formality". Plaintiffs' Response at p. 8 (*citing Information Resources Inc. v. U.S.*, 950 F.2d 1122, 1127 (5th Cir.1992)). Plaintiffs, however, submit only a letter from the Department of Justice Tax Division (mistakenly identified as a letter from the IRS) as proof that an IRS proceeding would be "a useless formality". Plaintiffs' Response at p. 8 and Exhibit B at D-1. The Court does not view this letter as conclusive proof that an administrative action before the IRS would be a useless formality.

there is nothing which requires Plaintiffs to exhaust their administrative remedies.

■ Plaintiffs have the better argument. The IRS is correct in asserting that a party cannot sue the IRS unless Congress has expressly waived sovereign immunity for the party's type of cases. *U.S. v. Nordic Village, Inc.,* — U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981); *Honeycutt v. Long,* 861 F.2d 1346, 1352 (5th Cir.1988). Congress has, however, in this case, expressly waived sovereign immunity. 11 U.S.C. § 106. Section 106 provides:

> (a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such government unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

11 U.S.C. § 106.

■ Under § 106(a), when a government unit files a claim in a bankruptcy proceeding, the government unit waives its sovereign immunity to any action the estate may bring based on the same transactions. *Nordic Village,* — U.S. at ——, 112 S.Ct. at 1015 ("Subsection (a) and (b) of § 106 meet this 'unequivocal expression' [of waiver of sovereign immunity] requirement with respect to monetary liability.")[2]; *Ashbrook v. Block,* 917 F.2d 918, 923 (6th Cir.1990) (government unit waives immunity to any suit which could be brought as a counterclaim under Fed. R.Civ.P. 13(a)). The IRS filed a Proof of Claim on September 23, 1992, in the bankruptcy proceeding in this case. *See* Declaration of Werner Powers, Ex. E. The Proof of Claim was based on the assessment that the IRS made on August 7, 1989. The Plaintiffs are challenging the validity of that assessment in this case, and thus, their claim arises out of the same transaction as the IRS's Proof of Claim. The IRS has waived sovereign immunity under 11 U.S.C. § 106(a).

■ The question then arises whether this waiver trumps the exhaustion requirement of § 7433(d). The courts are divided on this issue. *In re Town & Country Nursing Services, Inc.,* 963 F.2d 1146, 1154 (9th Cir. 1991). Courts in Pennsylvania and Florida have held that exhaustion requirements in the FTCA and Medicare Act bar review by the bankruptcy court until after plaintiff has exhausted administrative remedies. *In re St. Mary Hospital,* 123 B.R. 14, 16–18 (E.D.Pa. 1991); *In re Berger,* 16 B.R. 236, 237–8 (S.D.Fla.1981). However, courts in Georgia and Michigan have held that § 106 repeals the exhaustion requirements of other statutes. *In re Shelby County Healthcare Services,* 80 B.R. 555, 559–61 (N.D.Ga.1987); *In re Kenny,* 75 B.R. 515, 521 (Bankr.E.D.Mich. 1987).

■ The Court agrees with the Plaintiffs that § 106(a) constitutes an express and independent waiver of sovereign immunity which negates the exhaustion requirement of § 7433(d). Section 1334 gives the federal district courts original jurisdiction over all civil proceedings arising under or related to title 11. 28 U.S.C. § 1334. "The usual articulation of the test for determining whether a civil proceeding relates to a bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.*" *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984) (emphasis in original). Section 106(a), when read in conjunction with § 1334 constitutes an independent grant of jurisdiction to the Court over any claims brought by a debtor in response to a government unit's claim. *In re Town & Country Nursing Services, Inc.,* 963 F.2d at 1155. The IRS's assessment and proof of claim in this case will definitely affect the estate (Plaintiffs assert that the IRS's claim caused them to file for bankruptcy); Plaintiffs' challenge to the assessment, if found to be valid, would just as clearly affect the estate. Thus, this Court has jurisdiction despite the fact that Plaintiffs have not exhausted their administrative remedies.

---

**2.** The ultimate holding of *Nordic Village,* that subsection (c) of § 106 does not waive sovereign immunity for money damages, is inapposite to this case because this case is governed by subsection (a). *Nordic Village,* — U.S. at ——, 112 S.Ct. at 1017.

## 2. Statute of Limitations

██ The IRS next argues that the Freytags did not comply with the two year statute of limitations in § 7433(d)(3). The IRS argues that since their assessment was made on August 7, 1989, the Freytags were required to bring this action on or before August 7, 1991. What the IRS ignores, however, are the Treasury Regulations promulgated under § 7433 which provide that a cause of action accrues when "the taxpayer has had a reasonable opportunity to discover all the essential elements of a possible cause of action." Treas.Reg. § 301.7433–1.

Plaintiffs allege that in January, 1992, Mr. Freytag submitted a Freedom of Information Act (FOIA) request, and received, for the first time, some of the papers relating to the assessment. *See* Plaintiffs' Response at p. 3. Plaintiffs further assert that not until November, 1992, did they learn that the 23C certificate contained a second page, and not until April, 1993, when they deposed Zanarini, did they learn that the assessment may have been signed by a person without authority to make assessments. *See* Plaintiffs' Response at p. 4. Plaintiffs argue that their cause of action did not accrue until April, 1993, and that their filing of this action was timely.

The Court cannot rule as a matter of law that the statute of limitations has run.

## 3. Jurisdiction over the Request for Declaratory Relief

██ The IRS's third claim is that the Court lacks jurisdiction over Plaintiffs' declaratory judgment request because the Declaratory Judgment Act prohibits the district courts from considering federal tax cases. 28 U.S.C. § 2201. The IRS, however, fails to take into account that the "prohibition does not apply to [a] procedural challenge." *Rodriguez v. United States,* 629 F.Supp. 333, 341 (N.D.Ill.1986); *see also Yannicelli v. Nash,* 354 F.Supp. 143, 151 (D.N.J.1972).

The court in *Rodriguez* stated:

The Declaratory Judgment Act is intended, in tandem with [the Anti–Injunction Act] § 7421, to prevent disputes over the right to tax or the merits of an assessment from being heard in the district court unless the tax has first been paid. *Church of Scientology of Celebrity Centre v. Egger,* 539 F.Supp. 491, 494 (D.D.C.1982). Suits which do not thwart those goals are permissible under both Acts.

629 F.Supp. at 341.

Since Plaintiffs are challenging the procedure by which the assessment was made, and are not challenging the underlying merits of the assessment, the Court has jurisdiction over their Declaratory Judgment request.

## B. SUMMARY JUDGMENT

### 1. Standards

In proper circumstances, awarding summary judgment is not disfavored in the federal courts: "[s]ummary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1197 (5th Cir.1986).

██ Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. *See* Fed.R.Civ.P. 56. Before a court may grant summary judgment, the moving party must demonstrate that it is entitled to judgment as a matter of law because there is no actual dispute as to an essential element of the nonmovant's case. *See Topalian v. Ehrman,* 954 F.2d 1125 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The threshold inquiry, therefore, is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Of course, "the substantive law will identify which facts are material." *Id.* at 248, 106 S.Ct. at 2510.

The Supreme Court has explained that a movant for summary judgment need not support the motion with evidence negating the

opponent's case; rather, once the movant establishes that there is an absence of evidence to support the nonmovant's case, the burden is on the nonmovant to make a showing sufficient to establish each element as to which that party will have the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

▮ Once the burden shifts, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis in original) (*quoting* Rule 56(e)); *see also Fontenot,* 780 F.2d at 1195–98. A party must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355. Stated another way, "[i]f the record, taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.,* 948 F.2d 972, 974 (5th Cir.1991) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356). In determining whether a genuine issue exists for trial, all of the evidence must be viewed in the light most favorable to the motion's opponent. *Gremillion v. Gulf Coast Catering Co.,* 904 F.2d 290, 292 (5th Cir.1990). With these summary judgment standards in mind, the Court turns to an analysis of IRS's motion in this case.

## 2. Analysis

Plaintiffs do not contest the substantive validity of the assessment in question. Indeed, it has been definitively determined that Plaintiffs owe the money on which the assessment it based. *See Freytag,* 501 U.S. 868, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991). Further, as discussed *supra,* this Court would not have jurisdiction to determine the substantive validity of the assessment.

Rather, Plaintiffs allege a number of procedural flaws which Plaintiffs claim invalidates the assessment.

▮ Plaintiffs allege first that Richard Zanarini did not have authority to sign the assessment certificate because he was appointed to his position of assessment officer by an Assistant Director rather than the Director. Second, Plaintiffs allege that the 23C Certificate[3] had no indication on its face to relate the assessment to the Plaintiffs. Third, Plaintiffs argue that a tape which contained the necessary Reconciliation Sheet number (hereinafter, the Reconciliation Sheet number will be "RS number", and the tape which was attached to the 23C Certificate will be "RS listing")[4] was added to the 23C Certificate after August 7, 1989, and that the unidentified handwriting at the top of the RS listing raises an inference that the RS listing was falsified. Finally, Plaintiffs argue that because a transmittal tape which could verify the date of the assessment was destroyed, there is a disputed issue as to the date that the 23C certificate was signed.

▮ Plaintiffs rely on two premises to support all of their arguments. The first premise on which all of Plaintiffs' arguments are based is that the procedural rules of tax assessment must be precisely followed. According to Plaintiffs, if the IRS deviates in the slightest from the procedural prescription of the Tax Code and the Treasury Regulations, then the tax payer is entitled to a presumption that the assessment was fraudulently made. *See* Plaintiffs' Response at p. 1. In support of this argument, Plaintiffs cite *Robinson v. U.S.,* 920 F.2d 1157, 1161–62 (3d Cir.1990). *See* Plaintiffs' Response at p. 1. *Robinson,* however, was a case in which the IRS failed to provide notice of assessment to the debtors; because of the IRS's failure to provide notice, the debtors were denied "an opportunity to litigate the merits of the al-

---

**3.** The 23C Certificate is a summary record of assessments in which the IRS shows a breakdown of a total assessment sum into its component parts (e.g.. tax, penalty, interest) and which identifies the type of taxes being assessed (e.g.. individual income, corporate, excise, etc. ....). The 23C Certificate must be signed and dated by

a qualified assessment officer; the date on which the Certificate is signed is considered the date of the assessment.

**4.** A Reconciliation Sheet number is the number by which the IRS identifies the taxpayer against whom the assessment is made.

leged deficiency in Tax Court." *Id.* at 1161. The lost opportunity to litigate the merits of the case was "critical" to the Third Circuit in deciding *Robinson.* *Id.* *Robinson* does not hold that the slightest deviation from the procedural norm invalidates a tax assessment. Mindful of the maxim *de minimis non curat lex,* the Court will not find slight, essentially unimportant deviations from standard IRS procedure alone sufficient to raise presumptions of fraud and misfeasance by the IRS.

■ The second premise on which Plaintiffs heavily rely is that the IRS has a heavy burden to bear to succeed on summary judgment. The IRS does bear the burden in this summary judgment motion in showing that there is no disputed issue of material fact. The IRS is greatly assisted, however, by the presumption that official activities have been conducted properly. *U.S. v. Chemical Foundation, Inc.,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926); *Brown v. U.S.,* 890 F.2d 1329, 1334 (5th Cir.1989); *U.S. v. Dixon,* 672 F.Supp. 503, 506–507 (M.D.Ala.1987), *aff'd* 849 F.2d 1478 (11th Cir.1988); *United States v. Ahrens,* 530 F.2d 781, 785–86 (8th Cir. 1976). Once the IRS shows that the procedures used in this case were the normal official procedures of the IRS, then the presumption applies and the IRS has satisfied the initial burden of showing no material issue. The burden then settles on Plaintiffs to raise a material fact question as to the IRS's deviation from the official norm. *Dixon,* 672 F.Supp. at 507.

In this case, Plaintiffs have done nothing more than make allegations of slight deviations from standard procedure. While, in some instances, the allegations are supported, the alleged deviations do not raise a material issue of fact.

(a) **Whether the Assessment Officer who signed the 23C Certificate was Appointed in Accordance with Statutory and Regulatory Requirements**

■ Plaintiffs allege that Richard Zanarini, the person who signed the assessment certificate at issue in this case, was not appointed by the Director of the Service Center

as is statutorily required, and, hence was not authorized to sign the 23C Certificate.

Plaintiffs do not dispute that Zanarini was appointed to the position of assessment officer by Paul Beene, the Assistant Director of the Fresno Service Center. Plaintiffs do not deny that the IRS manual provides that the Assistant Director becomes the Acting Director in the absence of the Director. *See* IRS Handbook of Delegation Orders, Order No. 12, ¶ 14 (hereinafter "IRS Manual"), attached as Defendant's Appendix, filed August 23, 1993. Plaintiffs do not dispute that Beene was Acting Director at the time Beene signed the delegation order which authorized Zanarini to sign the assessment certificates.

■ As noted above, there is a general presumption that official activities have been conducted properly. *United States v. Ahrens,* 530 F.2d 781, 785–86 (8th Cir.1976). Appointing assessment officers is clearly an official activity. Plaintiffs, thus, have the burden of showing that the appointment was done in an irregular or illegal manner. The IRS manual, while not binding, provides the guidelines by which to judge the regularity of official conduct of the IRS. The IRS manual provides that the Assistant Director automatically becomes the Acting Director in the absence of the Director. *See* IRS Manual, ¶ 14. As Acting Director, Beene held the power of the Director to appoint assessment officers. Plaintiffs have failed to demonstrate irregularity.

The Court concludes as a matter of law that Zanarini was authorized to sign the assessment certificates. Plaintiffs' contentions to the contrary are devoid of merit.

(b) **Whether the 23C Assessment Certificate was Irregular**

Plaintiffs asserts that the 23C Assessment Certificate was irregular for three reasons. First, they assert that normally 23C Certificates are computer generated, and that the Certificate pertaining to their assessment was handwritten. Second, Plaintiffs claim that nothing on the 23C Assessment Certificate on which the IRS relied refers to Plaintiffs. Finally, Plaintiffs allege that the second page of the 23C Certificate which does

contain an RS number which refers to Plaintiff was fabricated sometime after Zanarini signed the first page of the certificate and was added to the Certificate.

### i) Computer Generation

In support of their first point, that 23C certificates are normally generated by computer, Plaintiffs direct the Court to the deposition of Dorothy Smith Logan ("Smith"). *See* Plaintiffs' Response at p. 3; Smith Dep. at 29, 83–84.[5] Contrary to Plaintiffs' interpretation, the Court reads the cited portion of Ms. Smith's deposition to mean that 23C certificates are regularly prepared by hand whenever the computer is down or unavailable. *See* Smith Dep. at 83–84.

Because the IRS prepares 23C forms by hand virtually every month, the Court finds that such preparation is a normal procedure for the IRS, and is entitled to a presumption of validity. Plaintiffs have failed to provide any evidence to refute this presumption. Smith's deposition combined with the unsupported allegation by Plaintiffs that the computer was available on August 7, 1989, is insufficient raise a material issue of fact.

5. The portions of the Smith deposition to which Plaintiffs cite read as follows:

At p. 29:

Q: 23C Coordinator. And what does a coordinator do?

A: We handle all the Reconciliation Sheets which you use to prepare the 23C.

Q: When you say handle the Reconciliation Sheets, what do you mean?

A: I have to math verify them, make sure the money amounts is correct on all of them before I put them into the computer so that the computer can print out a 23C Certificate.

At p. 83–84:

Q: When you do one of these on computer, as opposed to doing them by hand—one of these 23C's—can you describe for me what the computer-generated product looks like?

A: When you use a computer, you don't use a 23C, you use the Reconciliation Sheets for the computers.

Q: Okay, what does Mr. Zanarini sign?

A: Once I put it in the computer, it's going to come out a print of everything I put in. That's what he signs.

Q: So he signs a computer print-out, right?

A: Yes.

Q: Okay, this computer print-out, will it have listed all the Reconciliation Sheets on that computer print-out?

A: Yes.

### ii) The RS Listing

Plaintiffs' second point, that nothing on the face of the 23C certificate identifies Plaintiffs as the party to whom the 23C is relevant, is accurate, but immaterial. As Defendant points out, the face of the 23C certificate clearly states that the portion of the certificate which lists the RS numbers is continued. *See* Defendant's Reply at p. 6; Declaration of Werner Powers, Ex. 2 (23C Certificate). Defendant explains that the RS listing was taped to the back of the 23C certificate. Defendant's Reply at p. 6; *see also* Germain Dep. at p. 7; Smith Dep. at p. 84. Again, this appears to be a regular practice of the IRS, entitled to the presumption of validity. Smith Dep. at p. 84.

Plaintiffs attempt to rebut the presumption by asserting that the continuation of the RS listing was not included in the response to their FOIA Request. *See* Plaintiffs' Response at p. 3. Defendant explains that FOIA Requests are responded to by making hard copies of items which are on microfiche; the RS listing, because it was taped to the back of the 23C form, was not microfiched, and, hence, was not included in the response to Plaintiffs' FOIA Request. *See* Defen-

Q: And so what you have is a single integrated document that has all the Reconciliation Sheets on them, and that's what Mr. Zanarini normally signs?

A: Yes.

Q: As opposed to a hand-completed Assessment Certificate that may or may not have uninitialed attachments to it?

A: Yes.

Q: This has been done for—strike that.

I think we have established that the process of doing a manual certificate is repeated on a monthly basis whenever the computer is down.

A: Yes.

Q: And would it be fair to say that on a monthly basis what we are going to find is one or more Assessment Certificates that will have, or allegedly have, attached to them some ticker tape that Mr. Zanarini never initials?

A: I didn't understand the question.

Q: Would it be unusual when they are filled out by hand to have attachments to them such as these ticker tapes that allegedly were attached to this particular 23C?

A: Not if there was a lot of Reconciliation Sheets, it's not unusual.

dant's Reply at p. 6. Plaintiffs present the deposition of Richard Zanarini and the deposition of Sharon Young to support the argument that it was irregular for the IRS to fail to microfiche the RS listing. *See* Plaintiffs' Response at p. 4, citing Zanarini Dep. at p. 79, 81 and Young Dep. at 51. Neither Zanarini's deposition testimony[6] nor Young's deposition testimony[7] can be read to support Plaintiffs. Zanarini specifically testified that he did not know if the microfiche showed attachments such as the RS listing, and that he did not pay attention to the RS numbers. Young testified that someone had checked the microfiche in question and that the RS listing was not on the microfiche. Plaintiffs' attempted interpretation of Zanarini's and Young's respective testimony is wholly untenable, and does not support the allegation that the failure to microfiche the RS listing was irregular.

Defendant has submitted deposition testimony that when the original 23C certificate was pulled in 1992, the RS listing was taped to the back of the certificate. *See* Defendant's Reply at p. 6; Germain Dep. at p. 7. Plaintiffs have failed to refute Defendant's assertion that placing the RS listing on the back of the 23C Certificate was a regular activity entitled to a presumption of validity. Plaintiffs' argument again boils down to un-supported allegations, which does not rise to the level of a disputed issue of material fact.

### iii) The Handwriting

■ Plaintiffs' third and final point regarding the 23C certificate and the RS listing focuses on the handwriting at the top of the RS listing. Plaintiffs have submitted expert testimony which suggests that the handwriting on the top of the RS listing was that of Zanarini, and not of Smith. *See* Plaintiffs' Response at p. 8; Affidavit of Donald Lehew. As discussed above and below, Plaintiffs have failed to present evidence to overcome the presumption that the RS listing was created at the same time as the 23C certificate. Because the Court finds that the RS listing was created at the same time as the 23C certificate, it is immaterial who wrote the RS number at the top of the RS listing. Therefore, Plaintiffs fail to raise a material issue of fact.

### (c) Whether the 23C Certificate was Signed After the Deadline

■ Plaintiffs have alleged that because Zanarini's signature was dated at 3:59 p.m., August 7, 1989, there is a material issue of fact as to whether the assessment was timely. Plaintiffs have alleged that August 7, 1989, was the last day on which the IRS

---

6. Zanarini's Deposition read as follows:

At p. 79:
Q: Are the 23C Certificates microfilmed before they are sent to the non-master file unit?
   **Ms. Hytken:** What period of time are you talking about, 1989?
Q: They're microfilmed within a year; is that right?
A: Well, beginning in July—I believe it was July of 1990, we started microfilming back from 1972 forward.
At p. 81:
Q: ... What is it you don't believe?
   **Ms. Hytken:** With, you know, the stipulation that you are speculating
A: Okay, I'll speculate that I don't believe that the math tapes were microfiched. I don't know that for sure.
Q: I understand, but why do you not believe that they were microfiched?
A: Why do I believe they weren't?
Q: Yeah.
A: Because they're not a requirement to become a part of the 23C.
Q: Whereas the RS numbers are?
A: Yes.

Q: Okay. Is it atypical, or typical, for the RS numbers to be on some sort of adding machine tape attached somehow to the Assessment Certificate?
A: I don't know because I don't normally look at the RS numbers.

7. Young's Deposition reads as follows:

At p. 51:
Q: And did you check to see whether, in connection with this Assessment Certificate 89–145, the continuation of the Reconciliation Sheet listing was included on the microfiche?
   **Mr. Powers:** Objection. form. Leading. Mischaracterizes the record. Beyond the scope. No predicate.
A: I personally did not check.
Q: Okay. Did you have someone else check for you?
A: Yes.
Q: And what was the determination?
   **Mr. Powers:** Objection; hearsay. Objection; predicate.
A: The tape—the RS tape was not on the microfiche.
   **Mr. Powers:** Withdraw the objection.

could have made a valid assessment.[8] *See* Plaintiffs' Response at p. 5. Plaintiffs do not assert that Zanarini did not sign the assessment on August 7, 1989. Rather, Plaintiffs merely insinuate that a document which could have substantiated that the assessment was made on August 7, 1989, has been destroyed, and because of the destruction of that document, the Court has no way of knowing when the document was signed.

Plaintiffs' claim is meritless if not frivolous. Assuming, as the Plaintiffs do, that the assessment had to be signed on or before August 7, 1993, the Court need only look at the document itself to determine that the assessment was timely made. The document contains Richard Zanarini's signature and is dated August 7, 1989. Moreover, Mr. Zanarini affirmatively stated in his deposition that he signed the assessment on August 7, 1989. Zanarini's Dep. at p. 52. Plaintiffs have presented nothing to contradict the signature or Mr. Zanarini's statement.

Plaintiffs' unsupported allegation of untimeliness of the assessment fails to raise a question of fact.

### IV. CONCLUSION

The Court has jurisdiction over all facets of Plaintiffs' claim. Plaintiffs' Motions to Strike Evidence are **DENIED.** Because Plaintiffs have failed to show that there are any disputed issues of material fact, Defendant's Motion for Summary Judgment is **GRANTED.**

SO ORDERED.

---

**8.** Defendant does not concede that the assessment had to be made on or before August 7, 1989.